PERRY *vs.* MERCHANTS' INSURANCE CO.

1. When a policy of insurance is assigned after a loss has accrued, the assignee may maintain an action on it in his own name, either under the act of 1828 (Clay's Digest, p. 383), or under the Code (§ 2129), although it contains the usual stipulation against assignment.
2. The assignee's right to sue is not affected by a stipulation in the policy for its renewal, if it had expired without renewal before the assignment, and the right of renewal was gone with the partial destruction of the property.
3. An assignment of "all the loss or damage which accrued under the policy prior to" a specified day, passes the whole interest in the policy to the assignee, when it is shown that the loss had accrued, and the policy expired, before that day.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

THIS action, which was commenced by summons and complaint under the Code, was founded on a policy of insurance executed by the appellee to one Trimble on the "Planters' Press," including the warehouse, press, and machinery, which policy was assigned by said Trimble to the plaintiff. The plea was, "the general issue, with leave to give any special matter in evidence going to show that the plaintiff has no right to recover."

On the trial, the plaintiff produced the policy, which covered twelve months from the 8th of June, 1850, and was renewed for another year after its expiration; and then proved the assignment thereon endorsed, which was in these words: "For value received, I do hereby assign to N. W. Perry all claim or interest I have in any loss or damage which accrued under this policy prior to the 1st day of January, 1853.— Witness my hand, this        day of        1853. (Signed) George T. Trimble." "He then offered proof, showing that the loss accrued before the assignment of the policy to him; and there was evidence offered by the defendant, tending to show that the assignment, though after the loss, was previous to the year 1853; and there was no evidence offered by the plaintiff contradicting this proof offered by the defendant, except the date of the assignment as written on the back of the policy, which was dated in 1853, but the day and month were blank. Upon this evidence the court ruled, that the action could not be maintained in the name of the plaintiff; to which ruling of the court the plaintiff excepted, and was forced to take a non-suit." This ruling of the court is now assigned for error.

E. S. DARGAN, with whom was GEORGE N. STEWART, for appellant :

As the loss accrued before the assignment of the policy, the stipulation contained in it, that it should not be assigned without the written consent of the company, did not prevent the assignment; it was the risk, and not the money after the loss, that the company was unwilling should be assigned.— 2 Hall's R. 372; 3 Metcalf's R. 69; Duer on Insurance, 2 vol., p. 65; Smith's Mercantile Law, p. 415.

It is immaterial whether the assignment was before or

after the Code went into operation ; for the policy, after the
loss, was assignable, both under the act of 1828 (Clay's Dig.,
p. 383), and under the Code.   After a total loss, the policy
cannot, under either statute, be construed into anything else
than a written contract for the payment of money, and is
equally assignable under the express words of either statute.
It may be said that it is a contract to pay on a contingency ;
but that does not take from it its assignability.—Brown v.
Chambers, 12 Ala. 697 ; Burt v. Henry, 10 Ala. 874 ; 10
Missouri R. 675.   In Brown v. Chambers, *supra*, the act of
1828 was deliberately construed, and that decision is conclu-
sive for the appellant.   The case of Winston v. Metcalf, 6
Ala. 756, did not necessarily involve the construction of the
act of 1828, nor did the court undertake to construe it, but
the *dictum* of Judge Goldthwaite was confined to the act of
1812.   Nor can the case of Carleton v. Waters, 4 Porter, be
considered an authority for the defendant : in that case the
suit was against the drawee ; and the question was, whether
the instrument was a bill of exchange.   It was correctly
ruled that it was not ; and although the instrument in that
case was not assignable, yet this was not owing to the fact
that the undertaking of Campbell & Goldthwaite was to pay
money on condition, but to the fact that the instrument cre-
ated two distinct duties, viz., to use ordinary diligence to col-
lect, and also to pay.   An instrument of this compound
character is not assignable.—2 Litt. 166, which was followed
in 5 J. J. Marsh. 42, and in 7 B. Mon. 547.   But where the
instrument is to pay money, *or* to perform a duty, in the dis-
junctive, it is assignable, whether the payment of the money
be conditional or absolute.

   The suit would have been clearly maintainable under sec-
tion 1530 of the Code, without any assignment ; and to hold
that an obligation to pay on a contingency is not assignable,
would render a part of that section nugatory.   Therefore, to
give effect to section 1530, as containing more than section
2129, we must hold that debts due on condition, or contingent
debts, are assignable ; that is, an absolute debt may be sued
by the party entitled in equity to the money, but a contingent
debt must be assigned to enable the party beneficially inter-
ested to sue in his own name.

R. H. SMITH, *contra* :

Was the paper assignable, independent of the contract that it should not be without defendant's consent in writing? It is a contract in writing, with material stipulations, for the payment of an uncertain sum, upon several contingencies. It was assigned before the Code went into effect, and abides by the law in force when the endorsement was made.—2 Call's R. 232. Defendant insists, 1st, that it is not assignable under the act of 1812, of 1828, or under the Code; 2nd, that it does not fall within the category of those contracts, &c., which under the Code are to be sued in the name of the beneficiary, without regard to the endorsement.

By act of 1812 (Clay's Dig., p. 381, § 6) "all bonds, obligations, bills single, promissory notes, and all other writings for the payment of money or any other thing, may be assigned by endorsement." By judicial interpretation, a paper, to be assignable under this statute, (and the right, after loss under the policy, being a mere *chose* in action, is of course not assignable at common law,) must be without mutual stipulations, for a sum certain, and without contingency.—Henderson v. Hepburn, 2 Call 232; Lewis v. Harwood, 6 Cranch 83; Winston v. Metcalf, 7 Ala. 841; see, also, authorities from Kentucky and Missouri, cited in 12 Ala. 708. Hence the policy is not assignable under this statute.

Is it assignable under the act of 1828 (Clay's Digest, p. 382-3, preamble, and §§ 11, 12) ? The preamble to this act shows, that its object was to define the liability of endorsers, and not to enlarge the class of assignable papers. After prescribing the liabilities of endorsers of commercial paper in section 11, it provides, by section 12, that "all contracts in writing for the payment of money, or property, or performance of any duty, of whatever nature, shall be assignable as heretofore," There can be no pretence that this act enlarges the class of assignable instruments beyond that of 1812, unless it does so by the comprehensive words, "contracts for the performance of any duty, of whatever nature" ; and as the contract sued on is for the payment of money, and not the performance of a duty, it follows that the act of 1828 can in no wise give it an assignable character, unless it had it by act of 1812. Even if it contained provisions for the perform-

ance of duties by us, and even conceding such to be assignable, defendant is not sued for a breach of them, but for non-payment of the money ; and though it might be a good assignment of the breach of duty part, it passes no right to sue for the money.—Winston v. Metcalf, 7 Ala. 841. But the act of 1828 does not enlarge the class of assignable contracts. It refers to those before assignable, in order to fix the law of liability of endorsers, and then, through caution, declares they shall be assignable "as heretofore."

But it is said Brown v. Chambers, 12 Ala. 697, shows the paper to be assignable. That suit was on a bond for the conveyance of lands, on conditions to be performed by obligee. Judge Collier says, in effect, that the act of 1828 enlarges the class of assignable paper, by adding, "all contracts for the performance of a duty," that the bond was such, and therefore assignable. Concede it, and this in no wise proves that a contract for the payment of money is.

But that decision is a very remote dictum. 1. The order of sale, under which the bond passed, was held *coram non judice* and void. 2. The bond itself was void, the contract being a fraud on the pre-emption law.—Hair v. Deal & Lavender, 18 Ala. 798 ; Martin v. Tennison, 13 *ib.* 29; 12 *ib.* 669; 7 Por. 58; 2 *ib.* 148. 3. The bond was held not to have been assigned by any one having a legal right to endorse it. Then here is a void bond, passed on a void sale, that never was endorsed. Collier, C. J., holds, it could have been endorsed. This is hardly a precedent. The reasoning of Judge Collier would hardly stand criticism. The act of 1828 says, all contracts, &c., shall be assignable " as heretofore." He says, this does not mean, shall be assignable as they were by the act of 1812, but that others set out in the act of 1828 are assignable in the same mode as those set out in that of 1812, and this is by endorsement. But (law or not law) Brown v. Chambers does not touch the question in this record.

The paper which is assignable is by the statute subject to set-off ; but a conditional promise to pay an uncertain sum is not subject to a set-off. " Mutual debts" only are subject to off-set ; and hence the bond is not assignable by the very language of the act.

Then as to the Code : The authorities cited in 2 Call's Rep.

232 show (what is plain without it) that the law in force when the act was done is the law of assignment. But whether it is or not, section 1530 of the Code, solved by the rule of construction before established, certainly covers no larger class of contracts than the acts before cited. Does the Code authorize plaintiff to sue without endorsement? By section 2129, "every action founded on a promissory note, bond, or other contract, express or implied, for the payment of money, must be sued in the name of the party really interested"; and this means (as before shown) the payment of a sum certain, without contingency, &c.

But it is also insisted for defendant, 1st, that the assignment is void, because made without the written assent of defendant endorsed on it; and, 2dly, because the endorsement does not purport to assign the policy, but is a mere declaration that the money or losses accrued are to be for plaintiff, with a warrant of authority to him to receive.

The policy is renewable from year to year; it covers the building, the machinery, and the press. It is manifest there might be a loss on one, and yet the policy continue as to the others, as was the case. The assignment is of all loss accrued prior to January 1, 1853. The presumption is to be indulged against the plaintiff, that the policy, being renewable from year to year, and beginning in June, continued until June, 1853. The assignment, then, was not of the policy, but of a particular loss under it, the policy continuing as to other matters. The Code cannot be so construed as to allow two or three different persons to sue for different breaches of the same contract.

CHILTON, C. J.—Assumpsit by Perry, as assignee of one Trimble, upon a policy of insurance executed by the appellees. The assignment to Perry was in blank as to date, except the year, which was 1853; but the proof conduced to show that the loss was before the assignment. Conceding this, the question is, whether the assignee can sustain an action on the policy in his own name. The judge of the City Court held that he could not, and thereby forced the plaintiff to take a non-suit, who, under the statute, moves to set it aside in this court.

After a careful review of the statute, and the cases bearing upon this question, we are satisfied that the court mistook the law. The act (Clay's Dig. §§ 11, 12, p. 383), after defining the rules which shall govern the remedy in respect of foreign and inland bills of exchange, and promissory notes payable in bank, declares, that "all other contracts in writing, for the payment of money or property, or performance of any duty of whatsoever nature, shall be assignable as heretofore, and the assignee may maintain such suit thereon as the obligee or payee could have done, whether it be debt, covenant, or assumpsit."

The construction of this act, and the previous statute of 1812 relating to the same subject, came before this court in the case of Brown v. Chambers, 12 Ala. 697, 709-10, and we think the principle settled by that case fully justifies the assignee in this to maintain the action in his own name. The court, in that case, said : "Upon the first presentation of this case, the question presented itself, whether the general terms, 'performance of any duty of whatever nature,' should not be limited to contracts in writing, where the undertaking was absolute and unconditional, although the duty was to be performed *in futuro;* but further reflection and examination has satisfied us, that the assignee of a bond with reciprocal covenants may maintain an action against the obligor in his own name, upon showing that the undertaking of the latter has become absolute, by the performance of the conditions which are incumbent on the obligee."

In the case before us, the loss had accrued, and the money due from the insurers was payable absolutely, when the policy was assigned, and we see no objection to allowing the assignee to sue in his own name. The case we have just referred to, in principle, certainly authorizes him to do so, and we are satisfied with it as a correct construction of the statute.

The policy being assignable by law after the loss had accrued, and the money payable absolutely, the stipulation contained in it, that it should not be assigned, if it was intended to apply to it after the loss, cannot destroy the right of the assignee to appoint the person to receive or sue for the money by a transfer or assignment; but it is manifest from the terms of the policy that it was not intended to apply in such case.

24

It is insisted, however, that the policy provides for a renewal, and this right was not assigned; and being reserved to the insured by the policy, the whole interest of Trimble was not assigned, and a part of it could not be. Without intimating any opinion, as to what would be our decision, if it had been shown that the right to renew existed at the time of the assignment, we are satisfied that, under the facts of this case, it interposes no obstacle to a valid transfer.

The policy under which the loss accrued expired the 8th June, 1852, and was not renewed. Indeed, the condition of the property had been changed; a portion of it had been destroyed, so that the policy could not, in the nature of things, have been effected *on the same property* as mentioned and described in the application. The right to renew was, therefore, taken away by the destruction which produced the loss. Aside, however, from this, there is no positive right of renewal reserved by the policy after the condition of the property has undergone a change; on the contrary, the conditions of insurance provide that, in such cases, a new representation shall be made by the party insured. Indeed, it may be questionable, whether, in any event, the insurance office is bound to admit a renewal under the phraseology employed in the conditions annexed to the policy. The language is, "insurances once made may be continued for such further time *as may be agreed on,*" &c. Be this as it may, it is clear the time for renewal had passed, and the right to renew was destroyed by the loss of the subject-matter, or a portion of it, on which the insurance was effected, before the assignment, thus leaving the policy shorn of this question at that time.

If, however, we were wrong in the construction we place upon the act of 1828, we entertain no doubt that the action is properly brought under the Code. Section 2129 declares, that "every action founded upon a promissory note, bond, or other contract, express or implied, for the payment of money, must be prosecuted in the name of the party really interested, whether he have the legal title or not, subject to any defence the payer, obligor, or debtor, may have had against the payee, obligee, or creditor, previous to notice of the assignment or transfer." This section applies, as it affects the *remedy* merely; and after the loss was fixed, and the right of renewal

gone, the policy was nothing other than a contract for the payment of money.

Something was said in regard to the form of the assignment—that the policy is not assigned, but merely " the loss or damage which accrued under it prior to the 1st January, 1853"; but, if we are right in what we have said, that the assignment was after the policy had expired, and when the liability of the insurers had been fixed, no difficulty can exist upon this point; for the whole interest passes under the assignment. It was conceded at the bar, in the argument by the counsel on both sides, that the policy was renewed but once, and did not continue down to the 1st January, 1853; so that the loss accruing before that period is all that remains to be made good fully to satisfy the stipulations contained in it, and none could have accrued thereafter. It follows that the assignment passed the whole interest.

The motion to set aside the non-suit must be granted, with costs.