### HOME INS. CO. OF NEW YORK v. CAMPBELL MOTOR CO.

7 Div. 205.

Supreme Court of Alabama.

Oct. 12, 1933.

Rehearing Denied Nov. 9, 1933.

Lange, Simpson & Brantley, of Birmingham, for appellant.

Knox, Dixon, Sims & Dixon, of Talladega, for appellee.

KNIGHT, Justice.

Suit by Campbell Motor Company against the Home Insurance Company of New York, upon an insurance policy issued to H. A. Nelson and the Universal Credit Company. It appears that Nelson was the purchaser of a certain described truck, under a conditional sale contract executed to the seller, the Campbell Motor Company, and that the said Universal Credit Company was the assignee or transferee of this contract. The contract of insurance, among other things, covered loss by fire.

The complaint is in Code form for suit on a policy of fire insurance, with the added averments:

"And the plaintiff alleges that it is the sole party in interest under said policy, having purchased the mortgage of the Universal Credit Company mentioned in said policy, and having also acquired and had assigned to it all the right, title and interest of said H. A. Nelson, or Howard A. Nelson, the assured under said policy; and plaintiff alleges the said Universal Credit Company and said H. A. Nelson, since said fire loss have, for a valuable consideration, assigned to it all their right, title and interest in and to said automobile and in and to said policy of insurance sued on; and plaintiff is the sole party in interest under said policy at the time of the bringing of this suit."

We have indicated above that the complaint, consisting of but a single count, is in Code form, but this statement must be taken in connection with the further statement that there is in the body of the complaint what we shall treat as a mere clerical misprision, in that the complaint, in averring the destruction of the automobile, uses the word "described" by fire, instead of the word "destroyed" by fire. However, no point was made in the court below over the question,

and we think the complaint in this regard self-correcting.

The defendant demurred to the complaint, but the lower court overruled the demurrer, and amended demurrer thereto, and this action of the court is made the predicate for appellant's first three assignments of error.

■ The demurrer takes the point that the averment that the plaintiff is the sole party in interest is a conclusion of the pleader and not supported by the other allegations; and, further, that the averment of an assignment by the assured and the Universal Credit Company of all right, title, and interest in the insured property and in the policy is not a sufficient averment of a transfer to the plaintiff of a right to sue for the particular loss already accrued at the time of the transfer, and that, therefore, the plaintiff has not sufficiently averred a right to sue on the cause of action set out in the complaint. However, there is, as recognized by appellant's counsel, the further averment "that the plaintiff is the sole party in interest under said policy at the time of the bringing of this suit."

The transfer or assignment of the policy was made after the loss had accrued, and we are fully convinced that the averments of the complaint show that the plaintiff was the only party beneficially interested in the recovery, and, being such, was the only proper party plaintiff, and that the trial court committed no error in overruling the defendant's several demurrers, challenging the plaintiff's right to maintain the suit. Code, § 5699; Home Ins. Co. of New York v. Scharnagel (Ala. Sup.) 148 So. 596, 599;[1] Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25; Sov. Camp, W. O. W. v. Gunn, 224 Ala. 444, 140 So. 410; Perry v. Merchants' Ins. Co., 25 Ala. 355; G. Ober & Sons Co. v. Phillips-Burtoff Mfg. Co., 145 Ala. 625, 40 So. 278; So. States Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 So. 63; Union Ins. Society of Canton v. Sudduth, 212 Ala. 649, 103 So. 845; Norwich Union Fire Ins. Co. v. Prude, 145 Ala. 297, 40 So. 322, 8 Ann. Cas. 121; National Fire Ins. Co. of Hartford v. Kinney, 224 Ala. 586, 141 So. 350.

With its demurrers overruled, the defendant filed a plea of the general issue and three special pleas. We are not here concerned with plea 4, as it was withdrawn before the trial was concluded.

■■ Special plea 2 was based upon a provision of the policy, which was in words as follows: "Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage, or other encumbrance specifically set forth and described in paragraph B of this policy, this company shall not be liable for loss or damage to any property insured hereunder, while

---

[1] Ante, p. 60.

subject to any lien, mortgage, or other encumbrance." The plea averred that at the time of the destruction of the property, it was covered or encumbered by a mortgage given to the plaintiff, which was unsatisfied, and which was not set forth and described in paragraph B of the policy.

Defendant's special plea 3 set up, as a defense to the suit, a provision of the policy which provided that if the interest of the assured in the subject of the insurance be or become other than unconditional or sole lawful ownership, etc., the entire policy shall be void. It was then averred in the plea that the assured had executed a mortgage on the property, which was then in force, to the plaintiff, and that this mortgage was not specifically set forth or described in paragraph B.

The trial court held these pleas to be good on demurrer, and the plaintiff then filed a number of replications thereto. All replications went out of the case before the trial was entered upon, except the general replications, and replications 3, 4, and 5. These replications were filed to each of the special pleas 2 and 5, separately and severally.

Replication 3 undertook to set up facts constituting a waiver of the matters charged and averred in pleas 2 and 3. It is alleged in this replication that on October 12, 1931, after the loss, defendant's adjuster, H. O. Amos, proceeded to investigate and adjust the loss, and that the said adjuster, after ascertaining all the facts pertaining to the matters and things set up in said plea as a defense, did thereafter "with full knowledge of said facts, and while acting in the line and scope of his employment as defendant's adjuster, put the plaintiff, at a time when the plaintiff was the seller of the car and the endorser on the first mortgage and owner of the second mortgage referred to in the said plea, and was the real party at interest under said policy, to the knowledge of said Amos, to the expense and trouble of holding the salvage for the defendant on said automobile and refraining from selling said salvage, and the said H. O. Amos with full knowledge of the plaintiff's interest in said automobile and with full knowledge of all said facts set out in said plea as aforesaid did induce the plaintiff to go to the expense and trouble aforesaid, whereby the defendant did waive its right to set up a forfeiture of said policy under and by virtue of the provisions of said policy which are made the subject of defendant's plea." Replications 4 and 5 appear in the report of the case.

The defendant filed demurrers to replications 3, 4, and 5 as answers to each of defendant's pleas, separately and severally. The court overruled the demurrer, and the propriety of the court's ruling in this regard constitutes the appellant's assignments of error numbered 4, 5, 6, 7, 8, and 9.

It is earnestly insisted by appellant that plaintiff's replication as answer to plea 2 is insufficient for a number of reasons pointed out and stressed in its brief. It is not insisted, however, that the adjuster, under the averments of the plea, was without authority to make the waiver, but that the replications do not show that the plaintiff had such an interest in the policy at the time the alleged waiver was made, as that putting it, the plaintiff, to the expense and trouble of keeping the property, would operate as a waiver or estoppel in its favor against the defense asserted in said plea; and that there could be no effectual estoppel in the matter of the defense set up in said plea 2 for the reason that the loss, under the averments of this plea, was not, at the time, within the coverage of the policy, by reason of said mortgage.

We are clear to the conclusion that the averments of the replication sufficiently show that the said Amos was sent to Talladega with authority from the defendant to adjust the loss; that with full knowledge of all the facts set up in the plea, and which are relied upon by defendant as a defense to the suit, and with full knowledge, as averred in the replications, that plaintiff was the real party at interest under said policy, the said Amos, as such adjuster, did recognize and treat the insurance contract as a binding obligation on the part of his principal by having the plaintiff to go to the trouble and expense of holding the "salvage on the automobile" for the defendant, and in causing the plaintiff to refrain from selling the said salvage. These acts, on the part of defendant's duly authorized agent, under the averments of the replications, are consistent only with the idea that the adjuster had recognized and treated the policy contract as a binding and legal obligation upon the part of his principal, and thereby a waiver or estoppel was created against the defendant, to thereafter assert that the policy contract was not in force. It is well recognized, of course, that forfeitures provided in a policy of insurance may be waived by an agent in an effort to adjust the loss, if clothed with the authority, or apparent authority, and with full knowledge of the fact of the forfeiture. Home Ins. Co. of New York v. Scharnagel, supra; Ins. Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; Nat. Life Ins. Co. v. Reedy, 217 Ala. 114, 117 So. 8.

We are of the opinion, and so hold, that the relation of the plaintiff to the insurance contract, and his averred interest therein, are sufficiently shown by the replications. The replications show that the plaintiff had a direct and immediate financial interest in the policy contract, which was fully known at the time to said adjuster.

■■ But it is insisted by appellant that the provision of the policy set up in plea 2 is not merely a provision for forfeiture of a.

benefit contracted for; that it is not a warranty that the automobile is not encumbered by a lien or incumbrance; and that it is not a promissory warranty that the insured will not encumber the property. On the contrary, appellant takes the point that the provision invoked is that the insurer will not be liable for any loss occurring while the automobile is subject to an undisclosed lien. In other words, during the existence of the lien, which was not provided for in the contract, but actually provided against, any loss occurring will not be within the coverage of the policy. Therefore, that there can be no waiver or estoppel concerning a loss not within the coverage of the policy contract. To state the matter a little differently, the coverage of the policy cannot be extended or enlarged by waiver or estoppel.

We readily agree with counsel for appellant that if the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel. Waiver or estoppel can only have a field of operation when the subject-matter is within the terms of the contract. No one, we assume, would argue that a policy of insurance, which protected one against loss by fire, could be extended or broadened, by the application of the principle of waiver or estoppel, to cover loss by cyclone. The effect, in such a case, would be to create a new contract, without a new consideration. Great Am. Ins. Co. v. Dover, 219 Ala. 530, 122 So. 658; 5 Cooley's Briefs on Ins., page 3953; Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, 177 N. W. 242. However, we cannot agree with counsel for appellant that the execution of the mortgage by the assured to the plaintiff, and which was still in force at the time of the destruction of the automobile by fire, served to remove the property, and its loss, from the coverage of the policy contract. Such mortgage would give rise to a forfeiture of the contract, which would defeat a recovery, unless thereafter it was waived by some act of the insurer.

This question seems to have been decided adversely to appellant's contention in our recent case of Home Ins. Co. of New York v. Scharnagel, supra, wherein it is said: "Whatever the rule may be in other jurisdictions, it is established with us that a suicide exception contained in a life policy may be waived after investigation and with knowledge by an agent with authority; or estoppel founded thereon; or an exemption of military or naval service contained in a life policy can be likewise waived by the assertion of another ground of defense with full knowledge of the facts. It must follow that, under a theft policy, an insurer with full knowledge waives the provision or exception of loss by actual theft, where possession is given by the owner, by resting nonliability on other asserted grounds of defense, as that, for example, which is set up in replications 5 and 6—by a denial of liability on the ground that the policy was void because of the facts averred as to representations of cash purchase price. Liverpool & London & Globe Ins. Co. Ltd., of England v. McCree, 213 Ala. 534, 536, 105 So. 901; National Life & Accident Ins. Co. v. Singleton, 193 Ala. 84, 69 So. 80. * * * Thus is waived any defense defendant may have had under the contract, such as the existence of a mortgage or other lien, or the voluntary surrender of the possession to Carter. National Fire Ins. Co. of Hartford v. Tennessee Land Co., 224 Ala. 113, 139 So. 227; Ray v. Fidelity-Phoenix Fire Ins. Co., 187 Ala. 91, 65 So. 536; Indemnity Company of America v. Pugh, 222 Ala. 251, 132 So. 165; Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 459, 30 So. 537, and earlier authorities." It would thus appear that this court in the above cited and quoted from case recognizes that the loss was within the coverage of the policy, but that the breach of the policy provision would afford ground for forfeiture, which might be waived.

We are at the conclusion that replications 3, 4, and 5, as answers to each of defendant's pleas 2 and 3, were not subject to the demurrers filed thereto, and the court overruled same without error.

█ Upon conclusion of the evidence, the defendant, among other, written charges, requested the court to charge the jury that, under the evidence, they could not return a verdict in favor of the plaintiff, and a further instruction, to wit: "The court charges the jury that if you believe the evidence you cannot return a verdict for the plaintiff," with the following note: "The above charge is requested on general grounds and also on the further ground that there is a variance between the pleading and the proof, in that each of the plaintiff's special replications alleges that the plaintiff was put to the alleged trouble and expense at a time when plaintiff was the owner or principal party interested under said insurance policy, whereas the proof shows, if anything, that it was not such a party at the time it was put to the alleged trouble and expense."

The evidence tends to show, and, if believed, did show, that the truck in question was sold by the plaintiff to H. A. Nelson under a conditional sales contract, by which the title to the truck was retained until the same should be paid for in full; this contract of sale was executed on the 9th of May, 1931, and the contract was thereupon transferred and assigned by plaintiff to the Universal Credit Company. On the same day, the said Nelson executed to the Campbell Motor Company a note and mortgage on the same truck to secure the sum of $295.31 due and payable on or before November 9, 1931. This note was then indorsed by one J. O. Connor, at

the request of Nelson, and thereupon the same was discounted by the Campbell Motor Company at the Talladega National Bank. This mortgage and note were unpaid at the time the truck was destroyed by fire, and was a valid lien thereon.

The plaintiff offered in evidence the insurance policy; the said H. A. Nelson and the Universal Credit Company were named therein as the insureds, with the added provision: "Loss if any, to be adjusted with the purchaser, through (though) to be paid subject to all conditions of this policy, only to The Universal Credit Company for the account of all concerned."

The truck was partially destroyed by fire on or about October 9, 1931. On the 12th day of same month, while the salvage was in the warehouse of Campbell Motor Company, the adjuster of the defendant appeared, and, after an investigation of the loss, arrived at a tentative agreement with the said H. A. Nelson as to the amount of the loss. A written statement was made on that day by said Nelson, which in the parts here material recited:

"The undersigned hereby expressly agrees that the total loss and/or damage, occurring on or about the 9th day of October, 1931, and for which claim is made, as set forth in the undersigned's signed statement of loss, dated October 12th, 1931, to automobile covered by policy No. 37135–35 is actual value $547.00.

"The sole purpose of this instrument is to fix and evidence the total amount for which claim is made. This instrument is, and is intended to be, binding as to total amount of loss and/or damage said to have been incurred.

"*This instrument is not an acceptance of liability, does not commit the company to payment of said claim, and does not in any sense waive any of the conditions or provisions of the policy of said company.*" (Italics supplied.)

Up to this time the plaintiff—appellee—had not appeared in the picture as an owner of the car, or of the policy. The evidence wholly fails to show that up to and including the time when the tentative agreement was made, that the adjuster knew anything about the mortgage to the Campbell Motor Company, on the contrary it shows he knew nothing of the same; and he was in total ignorance of that fact when he offered to sell the damaged truck to Conner.

It further appears from the evidence that as soon as the adjuster discovered the existence of the mortgage to the Campbell Motor Company, Amos at once telegraphed or telephoned the Campbell Motor Company, who held the truck in its warehouse, as follows: "Hold up disposition of salvage Nelson truck until further notice hitch in adjustment." After that, the exact time is not disclosed, but long before the salvage was destroyed by the burning of the warehouse in which the truck was stored, the plaintiff was informed by Amos that the discovery of the existence of the mortgage of Nelson to the Campbell Motor Company, being the mortgage set up in defendant's special pleas, was the occasion of the hitch in the adjustment, and Amos then told the plaintiff's agent that whether the company would pay the claim, due to said mortgage, was questionable. Amos, in subsequent conversations, said in effect that it was questionable whether they would pay the claim on account of the above-mentioned paper, but told plaintiff's agent "he would do everything he could to try to get them to pay it."

Roy Evans, the manager of plaintiff company, and a witness for the plaintiff, and the only witness examined in the cause, testified, among other things, that "after Mr. Amos had been over on the 12th to make the adjustment with Mr. Nelson, he came back over at one time, *I don't know* what his business was, I didn't question him, and we talked about this matter at that time and discussed this hitch which he mentioned in his telegram, and he assured me that he would do everything in his power to get the company to pay this, and really saw no basic reason why they should not pay it." Even if it could be said that this offer and expression of opinion had any value as evidence under any circumstances, it is certainly of no value in the instant case, as it does not appear that Amos was then acting in the line and scope of any employment of the defendant.

The evidence shows that the salvage was destroyed by fire on or about November 1, 1931, and the assignment or transfer by Nelson was not made until January, 1932; it also shows that the Universal Credit Company never at any time reassigned the conditional contract of sale to the plaintiff. On the contrary, it shows that when the plaintiff, some time in December, 1931, paid to it the balance due on the contract, it returned the contract to it. The testimony further shows that the second mortgage, at the time of the alleged adjustment, and for some time thereafter—the length of time is not disclosed by the evidence—was still held by the Talladega National Bank, as its property.

The testimony sustains the allegation of the defendant's special pleas, but wholly fails to establish the averments of plaintiff's replications. The defendant was, therefore, due the general affirmative instruction, which was requested in writing, and refused to it. For this error, the judgment of the circuit court must be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS, J., concur in the opinion.

BROWN, J., concurs in the conclusion and so much of the opinion as holds that the affirmative charge should have been given the defendant.

