145 So.2d 422

### INLAND MUTUAL INSURANCE COMPANY

v.

### J. M. HIGHTOWER, Jr., et al.

6 Div. 411.

Supreme Court of Alabama.

June 21, 1962.

Rehearing Granted Oct. 4, 1962.

Wiggins & Wiggins, Jasper, Young &
Young, Vernon, Rushton, Stakely & Johns-
ton, Montgomery, for appellant.

Fite & Fite, Hamilton, Tweedy & Beech, Jasper, for appellees.

**COLEMAN, Justice.**

This is an appeal by an insurer from a declaratory decree whereby the insurer was held liable, under an automobile liability policy, to defend and protect its insured against the claims of a third party who had been injured in a motor vehicle accident.

This suit for declaratory relief was commenced by the insured against the insurer and the injured third party as respondents. The appellant is the insurer. The appellees are the insured and the injured party.

The insured owned a tractor which was towing a trailer, also owned by insured, at the time of collision. Tractor and trailer were then being operated by insured's employee who was acting within the line and scope of his employment. The tractor collided with an automobile then being operated by the injured third party, who will sometimes be referred to as the plaintiff.

By the policy, insurer agreed, "subject to the limits of liability, exclusions, conditions and other terms of this policy:" under Coverage A, to pay on behalf of insured all sums the insured shall become obligated to pay as damages for bodily injury; and, under Coverage B, to pay such sums for injury to property; caused by accident and arising out of use of the automobile described in the policy.

The automobile is described as follows:

| "Year Model | Trade Name | Body Type; Truck Size Tank Gallonage Capacity; or Bus Seating Capacity | Motor Number | Serial Number |
|---|---|---|---|---|
| "1. 1955 | International 190 | Tractor | M–4304–70335 | |
| "2. 1954 | Dorsey Tandem | Trailer | | SC–18–S26078" |

The policy contains the following endorsements:

"EXCLUSIONS

"This policy does not apply:

\* \* \* \* \* \*

"(c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by

the insured and not covered by like insurance in the company;

\* \* \* \* \* \*

"EXCLUSIONS

"Paragraph (c): It is agreed that this paragraph is amended as follows, under coverages A and B, while the automobile is used for the towing of any trailer or any other vehicle and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile

and not covered by like insurance in the company."

The insured "had six trailers." He owned an additional Dorsey trailer like the one described in the policy. The insurer contends that the trailer, which was being towed by the tractor at the time of the collision, was not the trailer described in the policy, was "not covered by like insurance in the company," and, therefore, that the insurer is not liable. The insurer says the court erred in holding to the contrary.

The tractor in the collision was the tractor described in the policy.

The evidence, as it seems to us, requires a finding that the trailer being towed was not the trailer described in the policy. Insurer, apparently, had issued no other policy to this insured. The insured testified that at the time of the accident he did not know which trailer was involved, but, on cross-examination, he testified as follows:

"Q  I am asking you if the trailer that was being towed by the tractor involved in the accident, was that the same trailer which is covered by this insurance policy?

"A  No, sir."

The record indicates that the trial court regarded the testimony as showing that the uninsured, and not the insured trailer, was in the accident. The record shows the following colloquy:

"THE COURT: The way I heard the evidence there is no dispute about the fact that the trailer insured by the policy wasn't attached to the tractor mentioned in the policy at the time of the accident.

"MR. YOUNG: There was no dispute about that.

"MR. FITE: Yes, there was a dispute about it.

"THE COURT: That is the way I heard the evidence."

It is obvious that if the trailer in the accident were a trailer insured by appellant, the appellant (insurer) could not avoid liability under the uninsured trailer exclusion and that would be the end of this opinion. As we have indicated, however, we do not think that the evidence will support a finding that the trailer in the accident was insured by appellant, and we proceed, as we think the trial court proceeded, on the premise that the trailer, which the insured tractor was towing at the time of the accident, was not a trailer covered by like insurance in the appellant company.

The appellees, however, contend that the insurer cannot avoid liability under the uninsured trailer exclusion because the insurer has waived, or is estopped to assert, that provision of the policy as a defense.

### Waiver.

The insurer insists that the uninsured trailer exclusion "is a valid limitation on coverage—not a forfeiture provision—which cannot be nullified by waiver or estoppel."

We agree that said exclusion cannot be nullified by implied waiver. We think there is a distinction between implied waiver and estoppel.

" *  *  * Though a waiver may be in the nature of an estoppel, and maintained on similar principles, they are not convertible terms. *  *  * A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel. *  *  *" Queen Insurance Co. v. Young, 86 Ala. 424, 430, 5 So. 116, 118. "*  *  * Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. *  *  *" Sovereign Camp, Woodmen of the World v. Newsom, 142 Ark. 132, 219 S.W. 759, 14 A.L.R. 903, 919.

The distinction between waiver and estoppel is to be observed in the instant case. This distinction appears in Belt Automobile Indemnity Ass'n v. Ensley Transfer & Supply Co., 211 Ala. 84, 99 So. 787, in an action on an automobile liability policy. The insurer sought to defend on a plea that the liability imposed on and discharged by the insured, for which insured sought to

recover from insurer, was a liability "expressly excluded from the indemnity obligation of the policy." This court said:

"It is settled by the decisions of this court that a liability not covered by an indemnity insurance policy will not be ingrafted on the policy by the mere act of the insurer in assuming control of the litigation and conducting the defense when the beneficiary is sued upon such a liability. (Citations Omitted.) In such a case there is no field for the application of any doctrine of waiver or election, for original, primary obligations are not created in that way. (Citations Omitted.)" (211 Ala. 84, 87, 99 So. 787, 790)

This court held, however, that the allegations of insured's replication were a sufficient answer to the plea setting up the policy exclusion. The court said:

"It is clear, therefore, that plaintiff's replications to defendant's special plea 3 must be grounded upon an estoppel, the essential constituents of which must be alleged. We think the replications do show the elements of a complete estoppel: (1) A position of authority assumed by defendant under color of right; (2) submission to and reliance upon that assumption, by plaintiff; and (3) injury suffered by plaintiff as a proximate consequence of such submission and reliance. That such an estoppel is sufficient, and is a valid answer to such a defense has been affirmed by a number of well-considered decisions. * * *" (211 Ala. 84, 87, 88, 99 So. 787, 790)

We agree with appellant that the uninsured trailer exclusion of the instant policy is a provision which is not subject to implied waiver by the insurer, as distinguished from estoppel. A liability of the insured occurring while the tractor was towing an uninsured trailer was not within the coverage of the policy. The language of the policy says that it " * * * does not apply * * * (c) under coverages A and B, while the automobile is used for the towing * * *" of an uninsured trailer. We are of opinion that insured's right to succeed in the case at bar cannot rest on the doctrine of implied waiver. There is no express waiver.

### Estoppel.

Insurer insists that even if the uninsured trailer exclusion be " * * * subject to being nullified by waiver, there would be no liability for there can be no such thing as a waiver of a ground of forfeiture by an insurance company until it knows that such ground exists or until it is in possession of facts which, if pursued, would result in knowledge of the forfeiture." This proposition has been stated with approval in Southern States Fire Ins. Co. of Birmingham v. Kronenberg, 199 Ala. 164, 74 So. 63, at paragraph [8, 9].

We have already said that the uninsured trailer exclusion was not subject to nullification by implied waiver.

We think, however, that the same rule, with respect to the knowledge of the insurer, which applies to waiver applies also to estoppel in the instant case; that is to say, the insurer, by doing an act which is relied on by the insured to his prejudice, does not estop itself, the insurer, from asserting the uninsured trailer exclusion as a defense, if at the time of doing the act the insurer does not know that an uninsured trailer was being towed and does not have knowledge of facts which, if pursued, would result in knowledge that the trailer being towed was an uninsured trailer.

Conversely, if the insurer did an act which was relied on by the insured to his prejudice and at the time of doing the act the insurer did know that an uninsured trailer was being towed or had knowledge of facts which, if pursued, would result in knowledge that an uninsured trailer was being towed, then the insurer is estopped from asserting the uninsured trailer exclusion as a defense.

On the day of the accident, October 23, the insured notified the agent who wrote the policy and the agent notified Reader, an insurance adjuster, who was employed by Crawford & Company, an independent insurance adjusting firm. Reader began investigation and took statements from the plaintiff and from the driver of insured's tractor on that day.

"* * * In the case of Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399, the principle is fully recognized that when an insurance company sends one to the scene of the fire imediately after it occurs with full power and authority to make examination, investigation and adjustment of the loss, he is regarded as the general agent to that extent and may waive the performance of the conditions in the policy. * * *" Hartford Fire Ins. Co. v. Clark, 258 Ala. 141, 157, 61 So.2d 19, 33.

The evidence, as we view it, justifies a finding that the adjuster in the instant case, Reader, may be regarded as the general agent of insurer to the extent that Reader had authority to waive conditions of the policy, and that the court could find that the acts of Reader were acts of and were binding on the insurer. Southern States Fire Ins. Co. of Birmingham v. Kronenberg, supra.

The injured party, Simms, testified that while he was in the hospital, Reader came to the hospital and saw him, Simms, on three separate days; that the first day was the day of the accident, and the third day was "two or three days" before Simms left the hospital; that Simms was in the hospital 30 days or "a little better"; that on each occasion Reader said to Simms: "They've got the insurance, and we will take care of you" and "Don't worry"; and that the insured, Hightower, was present on two of Reader's visits to Simms in the hospital.

Hightower testified that he accompanied Reader on two of his visits to Simms in the hospital, first on the day of the accident and again approximately a week or ten days later. With reference to Reader's statements to Simms on the first day, Hightower testified:

"Q (By Mr. Fite): What did he say, if anything, about the insurance company?

"A He introduced himself as Mr. Reader with the Crawford Company and said that he was representing me in determining the case."

As to Reader's statement to Simms on the second visit, Hightower testified:

"Q What was said on that occasion, Morris?

"A It was just a friendly chat. He still said he was glad he was getting along all right, and he would see that everything was taken care of.

"Q. He told Mr. Simms that he would see that everything was taken care of?

"A That he was representing the Crawford Company and told him to rest, and they would take care of him as long as necessary."

The witness Gilbert, who was a patient in the hospital, testified as follows:

"Q You are pointing to Mr. Reader?

"A Yes.

"Q All right, what statement did he make?

"A He told Mr. Simms, he says 'Don't stand back at any costs; we've got insurance to take care of you'. He says 'Be sure and don't let anything go liking (sic: lacking?)'."

The plaintiff, Simms, testified as follows:

"Q Do you remember any of the conversation that took place between Mr. Simms—I mean Mr. Reader and Mr. Hightower and you? That is, that first day?

"A Yes, he told me not to worry. He said 'They've got insurance, and we will take care of you.'

\* \* \* \* \* \*

"Q (By Mr. Tweedy): Did, on the second trip when they came up there, what did Mr. Reader say to you about insurance, if anything?

"A He says 'They've got the insurance, and we will take care of you'. He says 'Don't worry'."

The adjuster, Reader, testified:

"Q You can't be positive about that either. And you got medical authorization there from Mr. Simms, and you told him you hoped he would get along all right, didn't you?

"A Yes, sir, I told him that.

"Q And you told him you were going to take care of the doctor bills and expenses, didn't you?

"A I didn't tell him that I was going to.

"Q Well, did you tell him that the insurance company was going to?

"A At the time I made my investigation there was nothing to show that there was going to be a coverage question.

"Q I'm not asking you what it showed. I'm asking you if you didn't tell this gentleman sitting here in the presence of his wife on at least one occasion, if not—In fact the first time you went up there that you were investigating this claim for the insurance company? You told them that, didn't you?

"A I can't remember that far back."; and later:

"Q And you told him not to worry about anything. Just to go on and take care of himself, didn't you?

"A I sure did.

"Q And you told him you were here on behalf or representing Mr. Hightower's insurance company, didn't you?

"A Yes, sir.

"Q And you told him from that you had seen about it, it looked like it was a case of liability, didn't you?

"A I don't remember discussing the facts with him like that.

"Q You told him it looked like Hightower's driver was at fault, didn't you?

"A I don't ever admit liability, or anything like—

"Q You don't ever admit liability, no matter how bad the facts are against you? Is that right?

"A (No response)

"Q You told him that Mr. Hightower was covered by your insurance company, didn't you?

"A I told him—I don't remember exactly what I said, but—

"MR. WIGGINS: Let him finish his sentences.

"THE COURT: He says he doesn't remember. He answered it. He said he didn't remember.

"MR. WIGGINS: All right, go ahead.

"Q (By Mr. Tweedy): You don't remember what you did tell him, do you?

"A No."

Reader's testimony is that he visited Simms at the hospital twice, once on October 23 and again on November 2; that on October 23, Hightower and Reader went to the hospital together; that on the Friday following the "Wednesday of the accident" (we understand this to be November 2), Reader went back to the hospital and that he and Hightower "were there together at the hospital \* \* \*." As we understand the record, Reader denied visiting Simms on the third occasion two or three days before Simms left the hospital, and we further understand that Simms was at the hospital 30 or 31 days, so that he left on November 21 or 22.

As to Reader's knowledge that an uninsured trailer was being towed and identification of the vehicles, Reader testified with reference to the day of the accident as follows:

"Q What was the first thing you did about inquiry, if anything, about the insurance that was involved in it?

"A Mr. Goolsby's helper was in the office, a heavy set fellow, and he had a copy of the daily. I copy the policy information off of the daily on to a slip of paper, the name of the insurance company, their address and policy number, and the identification of the vehicles.";

and also:

"Q Well, during the process of your investigation that day, do you reccollect whether on that day you got in touch with Mr. Hightower for the purpose of identifying the tractor?

"A Yes, sir, Mr. Hightower and I identified the tractor. I remember specifically Mr. Hightower crawled up on top of the tractor there by the radiator. I didn't know where the motor number was, and he got up there and read it off to me while I stood on the ground and copied it off.

"Q And you compared it with the motor number you had taken off the day sheet involving this Inland Insurance Policy? Is that correct?

"A Yes.

"Q Did Mr. Hightower say anything about the trailer at the time?

"A Not that I can recall.

"Q Did you ask him where the trailer was?

"A I don't remember. * * *."

After the accident, the trailer was attached to another tractor and continued in use by insured in hauling articles over the highways, exactly where does not appear. Hightower testified that he did not know "* * * which trailer was which at the time of the wreck," and also:

"Q You didn't know which one was in New Orleans. That was your guess about it?

"A I had two Dorsey trailers just exactly alike.

"Q You don't know from the standpoint of the serial number which one was involved in this wreck, which of the Dorsey trailers?

"A I didn't have the serial numbers. I didn't buy the trailers new. The insurance was transferred to me. You understand that."

The policy in evidence shows the name of insured as:

"J. M. HIGHTOWER, SR."

An endorsement recites:

"It is agreed that named Insured is amended to read: J. M. Hightower, Jr. Winfield, Alabama"

Reader testified that on November 20, 1956, the trailer in the accident was pointed out to him by Hightower or his helper, and that the serial number of the trailer pointed out was not the serial number of the trailer in the policy.

Reader further testified that he had reported the accident to insurer and received in reply a letter from the insurer dated October 30, 1956. He also testified as follows:

"Q And you had never denied coverage until January 23, had you?

"A Under instruction of the insurance company.

"Q I say, you hadn't until that date, had you?

"A No, sir.

* * * * * *

"A There was plenty question of coverage from the day I received the letter from the insurance company, stating to identify the trailer.

* * * * * *

"Q · And you know you got that letter before you came up here on November 2nd, don't you?

"A Yes, sir.

"Q And you know you had gotten that letter before you went to the hospital to see him, to see Mr. Simms on the 2nd?

"A Yes, sir, that's right, but I didn't know that that was not the trailer.

"Q But at that time you told Mr. Simms and Mr. Hightower again for Mr. Simms to rest easy and not to worry about his bills, didn't you? ·

"A Sir, I may have made general statements around there, but I don't remember making any specific things like that.

"Q You don't remember saying those specific words?

"A No, sir.

"Q But you might have made some general statement like that?

"A Yes, sir."

The court could find that Reader, on November 2, the day of his second visit to Simms, while Hightower was present, made the statements testified to by Simms and others, and that Reader, at the time he made such statements, had information to put him on inquiry as to the identity of the trailer involved in the accident and as to the possible lack of coverage due to the uninsured trailer exclusion clause. The knowledge that Reader admitted he had as to the coverage question, after receiving the letter of October 30, and at the time of his visit to Simms on November 2, alone was sufficient knowledge to satisfy the rule requiring knowledge on the part of the party estopped. Southern States Fire Ins. Co. of Birmingham v. Kronenberg, supra. Moreover, if Simms spoke the truth, the evidence supports a finding that on the third visit, November 19 or 20, Reader continued to make similar statements after he had actual knowledge of the identity of the trailer,

which knowledge Reader admitted he acquired on November 20.

We think the evidence shows that substantial prejudice to the position of the insured, Hightower, resulted from the position assumed by the adjuster and the statements made in the presence of insured to plaintiff by the adjuster under color of right. By the adjuster's statements, the insured was induced to acquiesce in the statements made to plaintiff to the effect that plaintiff's expenses would be taken care of by Hightower's insurance company.

Being of the view that the trial court could find from the evidence, heard ore tenus, that the insurer was estopped from asserting the uninsured trailer exclusion as a defense, we are of opinion that the court was not in error in refusing to find that insurer was not liable under that exclusion.

The question of estoppel in this case is similar to the question in Hartford Accident & Indemnity Co. v. Lockard, 239 Miss. 644, 124 So.2d 849. In that case, decided on demurrer, the insurer had issued a policy on a tractor, which had collided with a truck owned by one Fairley. The policy contained an uninsured trailer exclusion substantially the same as is in Hightower's policy, and the Hartford Company, like appellant in the instant case, contended that it was not liable under the uninsured trailer exclusion. The insured contended that Hartford had waived or was estopped to assert the exclusion.

In holding that the insurer, Hartford, was not estopped, the court said:

"We are also of the opinion that under the facts alleged in the bill of complaint the appellant was not estopped to deny coverage under the policy because of the alleged action of the appellant's claim agent in having the Fairley truck taken to a garage for repairs before completing his investigation of the accident. The mere fact that the appellant's claim agent at the beginning of his investigation had the truck of Gaston Fairley taken to a garage for re-

pairs, under the mistaken belief that the damage to the truck was covered by the liability policy, did not prejudice the rights of the appellee under the policy or estop the appellant from asserting its right to deny liability under the policy after its investigation had been completed. Conner v. Union Automobile Ins. Co., 1932, 122 Cal.App. 105, 9 P.2d 863.

"Finally, it is argued on behalf of the appellee that since the appellant had taken over the investigation of the accident, without giving notice of a reservation of its right to deny coverage, and had permitted four months to pass before notifying the appellee that the claims of Fairley and Littlefield were not covered under the policy, the court should hold that appellant was estopped to deny coverage under the policy." (124 So.2d 849, 855, 856)

The court set out the basis of its holding that the insurer was not estopped as follows:

"* * * The general rule is that an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured. Southern Farm Bureau Casualty Ins. Co. v. Logan, 1960, 238 Miss. 580, 119 So.2d 268.

"No facts were alleged in the appellee's bill of complaint to show that the appellee was misled or harmed by any act of the appellant or that he was induced to act in a manner different from that in which he otherwise would have acted. No facts were alleged in the appellee's bill to show that any prejudice resulted to the appellee because of the appellant's delay in notifying the appellee that there was no coverage of the claims. No suit had been filed by Fairley or Littlefield at the time notice was given to the appellee that there was no coverage of the claims under the

policy; and the appellee, after receiving notice that the appellant denied coverage under the policy, had ample time to employ an attorney, make his own investigation of the claims and negotiate a settlement of the claims before the convening of the November 1956 term of the circuit court." (124 So.2d 849, 856)

We are of opinion that the instant appellant is estopped because its conduct did result in prejudice to the insured, Hightower. The statements allegedly made by Reader to Simms, to effect that "They've [Hightower] got insurance, and we will take care of you," resulted in prejudice to Hightower. The prejudice is that Hightower was induced to stand silent and acquiesce in the statements which impliedly admit that Hightower is liable for plaintiff's injury.

The statements attributed to Reader were not, so far as this record shows, offers of compromise. They were expressions of an intention to pay, and, relying on the statements, the insured stood silent when, if he disclaimed liability, he would be expected to deny it. Alexander v. Smith, 180 Ala. 541, 555, 61 So. 68; Louisville & Nashville R. Co. v. John W. O'Neill Co., 204 Ala. 154, 85 So. 482; Chestang v. Kirk, 218 Ala. 176, 118 So. 330; Powell v. Pate, 30 Ala.App. 10, 1 So.2d 36.

### Attorney's fee.

The court allowed to the insured a fee of $750.00 for services of insured's solicitor. The testimony is that a reasonable fee for insured's solicitor in the declaratory proceeding would be $500.00, and for "the work done thus far" in defending the action for damages brought by plaintiff against insured would be $250.00. Appellant insists that no fee should be allowed for services in the declaratory proceeding.

We have accepted the principle in this State that, in the absence of contract, statute, or recognized ground of equity, there is no right to have an attorney's fee paid by the opposing party. Low v. Low,

255 Ala. 536, 540, 52 So.2d 218. We know of no statute or recognized ground of equity which authorizes payment of an attorney's fee for prosecuting a declaratory proceeding.

In the policy contract here before us, we are cited to no provision providing for a fee to be paid by insurer for insured's attorney in a declaratory action on the policy. We are of opinion that the insurer, believing that the accident was not covered by the policy, was entitled to defend the declaratory suit without rendering itself liable to insured for the attorney's fee incurred by insured in successfully prosecuting the declaratory suit. Standard Surety & Casualty Co. of New York v. Perrin, La.App., 19 So.2d 783; Milwaukee Mechanics Ins. Co. v. Davis, 5 Cir., 198 F.2d 441.

The decree will be modified to allow a fee of $250.00 instead of $750.00.

### SR–21.

Appellant argues that the decree must be reversed because the court permitted the insured to introduce as an exhibit, a certified copy of a form, SR–21, allegedly filed in behalf of insured, by the insurer, with the Department of Public Safety in connection with the accident with which we are concerned. Appellant's insistence is that the court erred in admitting the exhibit in evidence after the cause was submitted for decree. In connection with offering additional evidence after submission, see Ex parte State ex rel. Brittain, 237 Ala. 164, 186 So. 148.

■ We have not given any weight to this exhibit which was not necessary to prove complainant's right to relief. If it were not in the record before us, the result would be the same. The inclusion of this exhibit in the evidence has not injuriously affected substantial rights of the parties and, under Supreme Court Rule 45, we do not think it cause for reversal.

### Absence of other insurer.

Appellant insists that the court erred in hearing the testimony and proceeding to judgment without the presence of another insurer, Continental Union Insurance Company, who allegedly had insured the trailer involved in the accident.

■ The adjuster, Reader, testified that in December, 1956, he took a statement from Hightower. · A statement, purportedly signed by Hightower and attested by Reader, appears in evidence and is dated December 18, 1956. Reader testified that the occasion of taking this statement was the first time that he, Reader, found out from Hightower that Continental Union Insurance Company had insurance on his other equipment. Thus it appears that appellant's agent, Reader, acting within the scope of his agency, in December, 1956, acquired knowledge of the existence of other insurance some twenty months prior to the hearing on October 9, 1958. We think appellant is chargeable with this knowledge.

On July 11, 1958, appellant filed its answer alleging that at the time of the accident, the trailer being towed was insured by Continental Union Insurance Company. The filing of the answer was two days short of three months before the hearing on October 9, 1958.

On September 12, 1958, the court set the hearing for September 23, 1958. It appears that the hearing was continued to October 9, 1958.

Appellant's cross-bill making Continental a respondent thereto was filed October 4, 1958. Although appellant had knowledge of Continental twenty months earlier as aforesaid, appellant made no effort to bring in Continental until the last mentioned date, five days before the hearing, so far as we find from the record.

This court has said:

"* * * The principle declared in our cases is that a trial on the original

**64**

and cross-bill is to be had at the same time. But when the cross-complainant has not taken needed steps to get the cross-bill at issue and prepare same for trial, the court may proceed on the original bill and answer though there is also a cross-bill. Thomas v. Skeggs, 223 Ala. 598(4), 137 So. 443. When an answer is also a cross-bill its nature as an answer is not affected. Burns v. Lenoir, 220 Ala. 422(5), 125 So. 661." Wilkins v. Reliance Equipment Co., 259 Ala. 348, 352, 67 So.2d 16.

■ We are therefore of opinion that the court was not in error in proceeding without Continental unless Continental was an indispensable party. We have not been cited to nor have we found any case squarely on all fours with the instant case as to whether or not Continental was an indispensable party.

Continental was at least a proper party. Maryland Casualty Co. v. Hubbard, D.C., 22 F.Supp. 697.

As to parties in declaratory proceedings, this court has said concerning § 166, Title 7, Code 1940, formerly referred to as § 7881(11), Michie's Code, that:

"The Declaratory Judgment Act, Michie's Sup.Code, § 7881(11) required necessary parties to be brought in. Regardless of this statute the presence of necessary parties is jurisdictional." Holland v. Flinn, 239 Ala. 390, 392, 195 So. 265, 266.

The court has also said, however, that § 166, Title 7,

"* * * does not render it mandatory that every interested person shall be made a party since it further provides that 'no declaration shall prejudice the rights of persons not parties'. But it is said that the absence of interested persons may induce the court to exercise its discretionary power to refuse to render a declaratory judgment when it would not terminate the con-

troversy. This is by reason of section 161, Title 7, Code. * * *" Trammell v. Glens Falls Indemnity Co., 259 Ala. 430, 435, 66 So.2d 537, 542.

We hold that Continental was not an indispensable party and that, in view of appellant's delay in making Continental a party, the court did not abuse its discretion in rendering a declaratory decree with Continental absent.

Continental, as we view it, was not an indispensable party to the controversy between appellant and appellees. The issue in this proceeding is appellant's liability vel non to defend and indemnify its insured. There can be a complete adjudication of the rights of the parties to the instant case, as between insurer and insured, without making Continental a party. Any decision reached in this proceeding will not prejudice the rights of Continental. § 166, Title 7, Code 1940.

The decree will be modified as aforesaid, and, as modified, is affirmed.

Modified and affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON and GOODWYN, JJ., concur.

## ON REHEARING

PER CURIAM.

On a restudy of the case and the pertinent authorities, the court believes we reached the wrong conclusion with respect to the doctrine of estoppel on original deliverance.

The case involved, inter alia, the question of estoppel. The latest decision involving this doctrine was the case of Mooradian v. Canal Insurance Co., 272 Ala. 373, 130 So.2d 915. Both the case at bar and Mooradian involved exclusions from coverage in automobile liability insurance policies. In Mooradian the policy provided that it did not apply to injury or death to passengers. In the instant case the policy provided that

coverage did not apply while the insured automobile was used for the towing of a trailer not covered by like insurance in the company. Mooradian held, in line with the practically universal concept, that coverage under the policy could not be enlarged by either waiver or estoppel, since such doctrine can only have a field of operation when the subject matter is within the terms of the contract, such as conditions or forfeiture provisions expressed in the contract.

Since Mooradian is the last of our cases which enunciates the doctrine, for convenience we will quote from that case:

"The unvarying rule is that coverage under an insurance policy cannot be enlarged by waiver or estoppel, since such doctrine can only have a field of operation when the subject matter is within the terms of the contract. Fidelity Phenix Fire Ins. Co. of New York v. Raper, 242 Ala. 440(6), 6 So.2d 513.

"In Home Ins. Co. of New York v. Campbell Motor Co., 227 Ala. 499, 150 So. 486, 489, this court observed:

" 'Waiver or estoppel can only have a field of operation when the subject-matter is within the terms of the contract. No one, we assume, would argue that a policy of insurance, which protected one against loss by fire, could be extended or broadened, by the application of the principle of waiver or estoppel, to cover the loss by cyclone. The effect, in such a case, would be to create a new contract, without a new consideration.'

"What appellant seems to seek here is to make a new contract so as to cover bodily injury or death resulting to a passenger in the insured vehicle, when by its terms, it is expressly excluded from the contract. The doctrine of estoppel does not operate to that effect. After a loss accrues, an insurance company may, by its conduct, waive a forfeiture; or by some act before such loss may induce the insured to do or not to do some act which is contrary to the stipulations of the policy, and thereby be estopped from setting up such violation as a forfeiture; but such conduct, though in conflict with the terms of the contract of insurance and with the knowledge of the insured, and relied upon by him, will not have the effect to broaden such contract so as to cover additional objects of insurance or causes of loss. The passenger hazard exclusion endorsement which was a part of the insurance contract instantly considered relieved the appellee from liability and assuming control of the defense of the insured could not by estoppel enlarge the coverage or obligate the appellee to continue representation in the suit." (130 So.2d 920)

█ As stated so many times by our court, one cannot create a primary liability and extend the coverage of a policy by either waiver or estoppel. To create such a primary liability all the elements of a binding contract are essential, including a new consideration. Some of our cases holding to this effect and supporting Mooradian are: Home Insurance Company of New York v. Campbell Motor Company, 227 Ala. 499, 150 So. 486; Protective Life Insurance Co. v. Cole, 239 Ala. 450, 161 So. 818; Equitable Life Assurance Society v. Langford, 234 Ala. 681, 176 Ala. 609; Fidelity-Phenix Fire Insurance Co. v. Raper, 242 Ala. 440, 6 So.2d 513; Jones v. Liberty National Life Insurance Co., 35 Ala.App. 52, 58, 47 So.2d 222; Union Marine & General Insurance Co. v. Holmes, 249 Ala. 294, 31 So.2d 303; Hanover Fire Insurance Co. of N. Y. v. Salter, 254 Ala. 500, 49 So.2d 193; Mutual Savings Life Insurance Co. v. Hall, 254 Ala. 668, 671, 49 So.2d 298; Jersey Insurance Co. v. Roddam, 256 Ala. 634, 56 So.2d 631; Patterson v. Woodmen of the World Life Insurance Society, 38 Ala.App. 328, 84 So.2d 127, cert. denied, 263 Ala. 700, 84 So.2d 130.

The authorities generally are the same, as shown by the text in 113 A.L.R. 858.

See the original opinion by COLEMAN, J., for a better understanding of the facts.

This court in pointing out that estoppel could not change or enlarge the coverage of an insurance policy, quoted from Home Insurance Co. v. Campbell in the Mooradian case, supra, to illustrate the principle, stating that no one, we assume, would argue that a policy of insurance, which protected one against loss by fire, could be extended or broadened by the application of the principle of waiver or estoppel, to cover loss by cyclone. The effect of such a case would be to create a new contract without a new consideration.

We hold, therefore, that under facts stated, the plaintiff was not entitled to recover and that the judgment must be reversed and the cause remanded.

Application for rehearing granted. Judgment of affirmance set aside. Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, MERRILL and HARWOOD, JJ., concur.

COLEMAN, J., dissented, adhering to his original opinion.