168 So.2d 251

## BLUE CROSS–BLUE SHIELD OF ALABAMA

v.

## Ivey K. COLQUITT.

### 6 Div. 951.

Court of Appeals of Alabama.

June 30, 1964.

Rehearing Denied Aug. 18, 1964.

Clement, Rosen, Hubbard & Waldrop, Tuscaloosa, and Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

Callahan & Nichols, Tuscaloosa, for appellee.

CATES, Judge.

This is an appeal by a hospital service corporation from a judgment against it in favor of Colquitt for $120 damages for breach of a group hospital service policy with medical and surgical rider.

Appellee, in brief, states the facts as follows:

"The appellee, Ivey K. Colquitt, secured hospital and medical insurance from the appellant under a 'group plan' in 1957. At that time appellee was an employee of the Alabama Novelty House of Montgomery, Alabama.

"Mr. Colquitt remained with Alabama Novelty House for about two more months after obtaining the insurance, and then went to work for Druid Life Insurance Company in Tuscaloosa, Alabama. Druid also had a group coverage with appellant and Mr. Colquitt's coverage was transferred to the Druid group.

"In November 1960, Mr. Colquitt went to work in Opelika, Alabama for Alliance Insurance Company of Dothan. Alliance also had group coverage on its employees with appellant. During the months of December and January Mr. Colquitt took his premiums to Druid * * * In the meantime Mr. Colquitt asked his supervisor [for Alliance

Life], Mr. J. B. Woods, to have his coverage transferred to Alliance.

"* * * Blue Cross-Blue Shield was notified [by Druid Life] that Mr. Colquitt was working for Alliance Insurance Company, and [Druid Life] requested that a transfer be made from the Druid group to Alliance group.

"On February 20, 1961 appellee received injuries in an automobile accident. At the time of the accident he was riding in an automobile driven by Mr. Coy Woods. As a result he was confined to two hospitals for treatment.

"Appellee contends that he had in effect at the time of the accident hospital and medical insurance with appellant and that appellant was liable for a portion of the hospital and medical expense. Appellant denied liability and defended the suit brought by appellee principally on the ground that appellee was covered under workmen's compensation and therefore excluded from coverage under the policy of insurance issued to appellee by appellant. Appellant adopts the position also that Mr. Colquitt's coverage terminated on February 15, 1961. Appellee submits that he was covered on February 20, 1961, and that his coverage extended until February 25, 1961.

"As a result of being confined to Lee County Hospital appellee incurred hospital and medical expense, $120.00 of which appellant was obligated to pay under the insurance policy in existence."

The pertinent provisions of the policy and rider read:

"SECTION IX—FEES, TERM AND TERMINATION
"(1) Fees

"Fees are due and payable to the Corporation in advance on or before the effective date of this certificate in the amount and manner and for the term (either a month or a quarter-year or a half-year or a year) specified and set forth in the subscriber's application, and, upon each renewal hereof, fees for the renewal term are due and payable to the Corporation in advance on or before the effective renewal date at the rate in effect at the time of the renewal. * * *

"(2) Term

"This certificate shall continue in force from and after its effective date for the term for which fees therefor have been paid in advance and may, with the consent of the Corporation, be renewed from term to term for successive terms by the payment of term fees in advance in accordance with the provisions of the preceding paragraph.

"(3) Grace Period

"A grace period of ten (10) days shall be allowed within which to make payment of any fees except the initial fee.

"(4) Automatic Termination

"Failure of the subscriber or of the remitting agent, if any, to pay fees on their due date shall thereupon automatically terminate the subscriber's contract with the Corporation as of such due date, *and the Corporation shall not be liable hereunder for any hospital service received by any member after said due date, unless such fees are paid within the ten (10) day grace period allowed hereunder.*" (Italics supplied.)

Error is assigned in the trial court's

(1) overruling defendant's amended demurrer to the amended complaint;

(2) overruling demurrer to Count One;

(3) overruling demurrer to Count Two;

(4) overruling demurrer to Count Three;

(5) in rendering judgment in favor of the plaintiff for $120 against defendant; and

(6) and (7) are variants of (5) above.

We omit reference to Assignment of Error No. 1 because of the detailed discussion under 2, 3 and 4, below.

### Assignment of Error No. 2.

Appellant contends that the most serious defect in Count 1 is that it is not alleged therein that defendant (appellant) failed or refused to pay the "hospital and doctors' bills incurred by the plaintiff."

Count 1 claims a sum due to the plaintiff by the defendant under the contract and avers that the contract provided that the defendant therein "agreed to pay the hospital and doctors' bills incurred by the plaintiff," etc. The count further avers that the plaintiff incurred hospital and doctors' bills and that the defendant has had notice of said hospital and doctors' bills.

Under these allegations there is, in effect, a breach of an agreement to save the plaintiff harmless from the consequences from incurring hospital and doctors' bills. The expression "incur" for services is definite and certain enough as herein used to withstand the scrutiny of a demurrer. J. B. McCrary Co. v. Town of Brantley, 202 Ala. 136, 79 So. 602.

### Assignment of Error No. 3.

It is claimed here that the demurrers should have been sustained because the terms of the contract, in effect, are at cross purposes with the allegations of Count 2 in a material extent. The contract was incorporated into the complaint. This discrepancy is stated to be that the contract only calls for Blue Cross to furnish "hospital service" and, therefore, the express allegation of Count 2 that Blue Cross "agreed to pay hospital and doctors' bills incurred by plaintiff" is a variance.

The contract expressly calls for the payment by Blue Cross of allowances to "non-participating hospitals" for hospital service. These allowances are agreed in the contract to be paid by Blue Cross directly to the hospital and consist of a "sum of Six ($6.00) Dollars per day as a credit toward the charge for room and board," in the case of a "Z" contract which was the type held by Mr. Colquitt. The medical service rider provides also that Blue Cross will, among other things, pay to the subscriber's physician the sum of $3.00 for each hospital call made after the third day of any hospital admission. Accordingly, as tested by demurrer, this variance becomes immaterial even though there are other provisions, such as those in Section II of the hospital service contract relating to the value of hospital service to be given the subscriber in "participating hospitals."

When the case was tried, the value of the services which Colquitt incurred for hospitalization and doctors was stipulated to be $120. This stipulation and the provisions of Circuit Court Rule 34 remove any variance between allegata and probata as error on appeal.

### Assignment of Error No. 4.

We consider that the demurrer was not well taken to Count 3, noting particularly that the allegation of the breach of contract is stated as "by failing to furnish hospital service as set out therein, including bed and board and general nursing care *as provided by said contract.*" This we consider as being merely a claim of failure to furnish such service as proof would show the plaintiff to be entitled to. Moreover, the contract was attached to and made a part of the *entire complaint* in this Count 3.

### Assignment of Error No. 5.

It is argued hereunder that the forfeiture clause of the contract came into operation because the premium due February 15 was never paid. The loss (to use insurance terminology) which occurred on February 20, it is argued, was after the expiry of the term of the policy. Under cases such as Inland Mutual Ins. Co. v. Hightower, 274 Ala. 52, 145 So.2d 422, a new consideration moving from the insured to the underwriter would be necessary to support an extension of the term of the contract.

This would be valid except for the fact that the contract provides for a ten-day grace period. Our courts are committed to the rule that when a loss occurs within the grace period, giving rise to an obligation by the underwriter to the insured for an unencumbered sum at least equal to the unpaid premium, then the premium is deemed to have been paid and the term of the policy is appropriately extended. McMaster v. New York Life Ins. Co., 183 U.S. 25, 22 S.Ct. 10, 46 L.Ed. 64; Kubala v. United States, 5 Cir., 210 F.2d 943, citing with approval United States v. Morrell, 4 Cir., 204 F.2d 490; Cilek v. New York Life Ins. Co., 97 Neb. 56, 149 N.W. 49. 1071; Williston on Contracts, 3d Ed., § 908.

In Equitable Life Assur. Soc. of United States v. Roberts, 226 Ala. 8, 145 So. 157, the court recognized this principle, stating that, with respect to otherwise undesignated dividends, there is a legal obligation on the "insurer" to apply such dividends to the payment of the premium in order to avoid forfeiture of the policy.

Again in Benefit Ass'n. Ry. Employees v. Bray, 226 Ala. 444, 147 So. 640, accruing sick benefits were applied to avoid lapse for nonpayment of premiums, and Foster, J., stated, as a general rule, "that an insurance policy cannot be canceled by the insurance carrier for nonpayment of premiums when it has a credit to the insured of an amount equal to such premium otherwise unappropriated by the insured." See also Prudential Ins. Co. v. Gray, 230 Ala. 1, 159 So. 265.

Blue Cross argues that the workmen's compensation exclusion of the Blue Cross certificate should relieve the company from any liability. We agree with Blue Cross's contention that this exclusion is not made to depend upon whether or not the subscriber obtains workmen's compensation benefits but rather resolves itself into a question as to whether or not they are, in fact, legally available.

██ Blue Cross undertook to prove the exclusion was operative and, accordingly, bore the burden of persuasion to establish the proposition that Colquitt's injuries occurred while he was in the line and scope of his employment as an agent for Alliance Life Insurance Company.

The evidence as to Mr. Colquitt's activity is of an ambivalent nature, that is, he testified that he went riding in a car driven by a fellow employee. Blue Cross concedes that on at least one point there was a conflict of testimony. This came about from a fellow employee, Woods, testifying that he and Colquitt were not going to work at the time of the accident. Colquitt had testified "he did not know where they were going." It is argued: "However, in the face of the documentary evidence reflected by the record, the trial court should have discarded Woods' testimony on well recognized principles."

In reply brief, Blue Cross cites us to Sloss-Sheffield Steel & Iron Co. v. Metropolitan Cas. Ins. Co., 28 Ala.App. 366, 185 So. 395, for the proposition that where an "employer-employee relationship is shown, it would be presumed that the employer is subject to the workmen's compensation laws of the state." We are unwilling to apply such presumption in the instant case since Blue Cross expressly undertook to establish this coverage by the filing of its Plea No. 2.

On page 106 of the record, there came into evidence the invoice which Blue Cross sent to Druid Life Insurance Company for the February 15, 1961, payment. This shows the amount of premium due from Mr. Colquitt to be $8.20. We believe that the trial judge, in calculating the damages, failed to subtract this amount from the stipulated $120.00.

Accordingly, unless a remittitur for $8.20 is filed with the clerk of the court within thirty days, the judgment below is due to be reversed and remanded. Otherwise, should such remittitur be so filed, the judgment below is due to be affirmed.

Affirmed conditionally.