242 So.2d 398

**BLUE CROSS–BLUE SHIELD OF ALABAMA, a Corporation,**

v.

**Cecil CRAIG.**

**4 Div. 12.**

Court of Civil Appeals of Alabama.

Dec. 16, 1970.

Albrittons & Rankin, Andalusia, Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

Powell & Sikes, Andalusia, for appellee.

BRADLEY, Judge.

Judgment was rendered by the Circuit Court of Covington County on September 19, 1969 for $467.90 in favor of plaintiff-appellee, Cecil Craig (hereinafter referred to as Craig), and against defendant-appellant Blue Cross-Blue Shield of Alabama, A Corporation (hereinafter referred to as Blue Cross), as benefits for hospital and medical services rendered in January 1968.

On October 13, 1969 an amended judgment was rendered by the Circuit Court on behalf of Craig in "the sum of $485.55 less $17.65, the amount of insurance premiums on the policy for the month of January, 1968."

From the amended judgment an appeal was taken to this court by the filing of a supersedeas bond in the Circuit Court. Blue Cross filed ten assignments of error with the record on appeal.

Suit was commenced by complaint in the Intermediate Court of Covington County for hospital and medical expenses allegedly due under a contract issued by Blue Cross for the hospitalization of Craig's wife and children during the month of January 1968.

Blue Cross filed a plea in short by consent and the case was submitted to the Intermediate Court on the pleadings and an agreed-on stipulation of facts. Judgment was rendered by said court on April 22, 1969 in favor of Craig in the amount of $467.90.

On appeal to the Circuit Court from the Intermediate Court, the cause was submitted to the Circuit Court, sitting without a jury, on the pleadings and stipulation previously submitted to the Intermediate Court.

The Stipulation of Facts revealed that a "Family Contract" had been issued by Blue Cross to Craig, effective on November 1, 1966, providing benefits which included in-patient hospital service, medical care, and surgical benefits, the terms and conditions of which are set forth in the certificates attached to the stipulation.

The certificates provide that the Hospital Service Certificate (hereinafter referred to as "Certificate") will govern the availability of benefits, as the medical benefit rider and the surgical benefit rider are valid only so long as the "Certificate" is in full force and effect.

According to Section VI of the "Certificate," fees (premiums) are:

"* * * due and payable to, and must be received by, the Corporation in advance. * * *"

The "Certificate" further provides:

"Term—* * * this contract shall commence and continue in force * * * for the term for which fees have been paid in advance and from term to term thereafter so long as the applicable fees are paid in advance unless terminated as hereinafter provided."

The fees payable by Craig under the above provision were therefore due and payable to Blue Cross monthly on the first day of each month for one month extending from the first day of each month through the last day of each month.

It is undisputed that such fees were duly paid by appellee for each of the one month terms commencing with the effective date of the contract (November 1, 1966), and ending on December 31, 1967, and that Craig's contract continued in force and effect through December 31, 1967.

It is also undisputed that the last of such fees paid to Blue Cross by Craig were paid for the one month term commencing on

December 1, 1967 and ending on December 31, 1967.

Furthermore, the fees for the continuation of Craig's contract during the month of January 1968 were due and payable to Blue Cross on January 1, 1968, but no fees for the month of January 1968 were ever paid to Blue Cross. Blue Cross subsequently notified Craig that his contract was terminated effective January 1, 1968 for non-payment of dues (premiums), as provided for by Section VII.A.5 of the "Certificate."

However, Section VI.3 of the "Certificate" provides for a "grace period" of thirty days for the payment of delinquent fees, but it also provides that if such fees are not paid to and received by Blue Cross within the "grace period" of thirty days, the "* * * Contract shall terminate * * * as of the date such fees were due, and the Corporation shall not be liable for, and this Contract shall not cover, any benefits furnished to any Member during the grace period."

Section V.3 of the "Certificate" also provides:

"Exclusions. No Benefits Shall Be Provided Hereunder With Respect To:

* * * * * *

"Hospital services rendered or received during the grace period * * * if actual payment of fees then due is not received * * * within such grace period. Receipt by a Member of Hospital Service during the grace period shall not constitute payment of fees."

The hospital service and other services on which Craig's action rests were not furnished until the second week in January 1968 (the hospitalizations commencing January 6 and 7, 1968), which was during the month for which the fees were never paid to Blue Cross and subsequent to the effective date of the termination of Craig's contract according to the terms of the contract.

Each of the ten assignments of error is predicated on the alleged erroneous judgment, as amended, entered by the Circuit Court permitting Craig to recover under his contract with Blue Cross.

Assignment of error three provides:

"The trial court erred in rendering in favor of the plaintiff and against the defendant its judgment of September 10, 1968, and its amended judgment of October 13, 1967."

The issue, as presented by the assignments of error, seems to us to be whether, under the terms and conditions of the contract, coverage is provided for service furnished to a member during the grace period specified in the contract when fees which are due are not paid to Blue Cross during such grace period.

Blue Cross says that the contract benefits claimed by Craig were based solely on services rendered during January 1968, after the contract's termination because the contract was terminated automatically according to the provisions of the "Certificate" when Craig failed to make his payment for the one-month term from January 1 to January 31, 1968.

Blue Cross concedes, however, that the contract provides for a thirty day grace period within which the fees may be paid after their due date; yet vigorously contends that the contract explicitly excludes any coverage of benefits for hospital service received during such grace period if actual payment of the fees is not made to it during that period.

To support this position, Blue Cross argues two provisions found in the "Certificate," which provide, in Section VI.3, that if such fees are not paid within such grace period, the contract shall terminate as of the due date and shall not cover any benefits furnished during the grace period; and, in Section V.3, that no benefits shall be provided if actual payment of fees then due is not received within the grace period.

As we interpret the argument made by Blue Cross, it is saying that while Craig has the right to make payment during this

grace period and be covered, that if he does not make payment during said grace period, normal coverage is explicitly excluded.

Furthermore, Blue Cross contends that the rationale of the case of the Court of Appeals relied on in brief by Craig, and the two Alabama Supreme Court cases therein cited, which provides that when an insurer owes an insured a sum equal to the amount of the unpaid premium to continue a policy in force, the insurer must apply the sum which it thus holds to the payment of a delinquent premium so as to prevent a forfeiture of the policy, does not avoid or affect the express exclusion contained in its policy of insurance with Craig.

Blue Cross' appraisal of the present case boils down to the proposition that because of the express provisions contained in the "Certificate" which exclude coverage during the grace period where the fees are not paid during said period, and particularly excluding the application of services rendered to the payment of delinquent fees, it did not "owe" Craig any amount of money which could be applied to the unpaid fees.

Craig says that the provisions of the policy permit the insured to pay the fees due under the policy within thirty days of their due date—this is the so-called "grace period" allowed under the policy—and that if benefits accrue during the grace period as a result of hospital service being received by the insured, an amount equal to the fees due should be deducted from the benefits "owed" to the insured and be applied to the payment of the fees due so as to prevent a lapse of the policy and a forfeiture of the benefits available thereunder. In support of this proposition, Craig cites us to the case of Blue Cross-Blue Shield of Ala. v. Colquitt, 42 Ala.App. 471, 168 So.2d 251.

In the *Colquitt case*, supra, the Court of Appeals of Alabama was faced with a factual situation somewhat similar to that at bar in that the premium due to the insurance company on February 15, 1961 was never paid. The loss for which suit was

brought occurred on February 20, 1961, during the ten day grace period provided by the policy. In deciding whether the insurer became obligated for benefits accruing during the grace period when no premium was paid, the Court of Appeals said:

"* * * Our courts are committed to the rule that when a loss occurs within the grace period, giving rise to an obligation by the underwriter to the insured for an unencumbered sum at least equal to the unpaid premium, then the premium is deemed to have been paid and the term of the policy is appropriately extended. [Citations excluded]"

In support of this legal axiom, the Court of Appeals cites us to the Alabama cases of Equitable Life Assur. Soc. of U. S. v. Roberts, 226 Ala. 8, 145 So. 157; and Benefit Assn. Ry. Employees v. Bray, 226 Ala. 444, 147 So. 640.

In the *Roberts case*, supra, the Supreme Court had before it a question of whether or not a life insurance policy had lapsed for non-payment of premium prior to the death of the insured.

The court stated that the insurer had declared a dividend and placed it to the credit of the insured prior to the due date of the premium that was not paid before the death of the insured.

The court held:

"We therefore approve, as the law of insurance contracts * * *; and accordingly hold that where the insurer, at the time of default in the payment of premium, has in his hands dividends duly declared, sufficient to meet such premium, or unpaid portion thereof, and which have not been theretofore otherwise applied in accordance with the terms of the policy, or by mutual consent, a legal obligation is on the insurer to apply such dividends to the payment of the premium in order to avoid a forfeiture of the policy."

In the case at bar there were no dividends duly declared that could be applied to the payment of the delinquent fees.

In the *Bray case*, supra, the Supreme Court said:

"There is a general rule that an insurance policy cannot be canceled by the insurance carrier for nonpayment of premiums when it has a credit to the insured of an amount equal to such premium otherwise unappropriated by the insured. " * * * When the sickness begins, while the policy is in force, the sick benefits then begin to accrue, and a policy cannot be avoided or canceled for nonpayment of premiums when the sick benefits unpaid are sufficient to discharge them."

In the case at bar, there was no credit with the insurer from which insured's premium could be paid; nor did the sickness begin while the policy was in force according to the terms of the policy.

The rule promulgated in *Colquitt*, supra, is not supported by the principles enunciated in *Roberts* and *Bray*, supra.

*Roberts* and *Bray*, supra, are based on the existence of a "credit" in favor of the insured, held by the insurer, and out of which the insurer can pay the delinquent premium; viz, declared dividends which have not been designated for other uses, or the sickness commenced prior to the delinquency.

In *Colquitt*, supra, there was no "credit" held by the insurer for the benefit of the insured at the time the premium became delinquent, nor at the time services were rendered on behalf of insured, which could have been used to pay the delinquent premium.

Therefore, *Colquitt*, supra, is not supported by either *Roberts* or *Bray*, supra.

Furthermore, we do not believe that *Colquitt*, supra, established a public policy that services rendered under a policy of health insurance during the grace period where the premium had not been paid was compensable, especially where there was no statute requiring such a result or where the specific language of the policy did not require such a conclusion.

Also in *Colquitt*, supra, the language of the policy therein construed did not expressly preclude the application of benefits flowing from services rendered during the grace period while the premium was unpaid, whereas in the case at bar the language of the policy in question expressly precludes the use of any part of the benefits supposedly accruing under the policy to the payment of the overdue premium. See Section V.3 of the "Certificate" wherein it is provided:

" * * * Receipt by a Member of Hospital Service during the grace period shall not constitute payment of fees."

To us the language of the policy relating to the present controversy is clear and unambiguous and not subject to interpretation.

In the recent case of Alabama Farm Bureau Mut. Cas. Ins. Co. v. Govt. Employees Ins. Co., 4 Div. 331, 5 ABR 157 (Oct. Term 1970–71), the Supreme Court quoted with approval the following language found in Central Mut. Ins. Co. v. Royal, 269 Ala. 372, 113 So.2d 680:

"When the language of an insurance policy is clear and unambiguous it must be construed as it reads. The courts are not at liberty to raise doubts where none exist or to make a new contract for the parties."

It also quoted with approval the following language from the case of Chemstrand Corp. v. Maryland Cas. Co., 266 Ala. 626, 98 So.2d 1:

" * * * Provisions in policies of insurance which clearly disclose the parties' real intent are not to be given a strained construction to raise doubts where none reasonably exist."

The language contained in paragraph V.-3 of the "Certificate" in the case at bar is,

as we have said, clear and unambiguous and we do not think "we are at liberty to raise doubts where none exist." We further believe that the language of the "Certificate" clearly discloses the parties' real intent, and that was that services rendered during the grace period could not result in benefits which could be applied to the payment of the delinquent fees.

To say otherwise in the face of the clear language of the policy would be applying a "strained construction to raise doubts where none reasonably exist."

It goes without saying that this we cannot do.

It is also said in Loveman, Joseph & Loeb v. New Amsterdam Cas. Co., 233 Ala. 518, 173 So. 7, as follows:

"No one doubts, we take it, that in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; * * *. Thus they have the right, in the absence of statutory provisions to the contrary, to write their contracts with narrow coverage, if they see proper to do so. There is no compulsion against either the assured or insurer. The assured may, or may not, as he sees proper, take the policy."

We are unfamiliar with any statutes in this state prohibiting an insurer from limiting its liability as was done by Blue Cross in this case.

In view of the language of the cases above cited, we think appellant had the right to set out in its "Certificate" that coverage would not be extended to insured during the grace period unless the fees due were paid to said insurer or its agent during said period, and that services rendered during said grace period could not result in benefits which could be applied to the payment of the delinquent fees.

There was no compulsion against insured to take the "Certificate" under those conditions. It was a voluntary decision on his part.

Inasmuch as the insured-appellee did not comply with the clear provisions of the "Certificate" by paying the fees due during the grace period to the insurer, there was no money "owed" to insured during said time that could be applied to the payment of the delinquent fees; consequently, insurer-appellant was not liable to the appellee for the services received due to the hospitalization of his son and wife during the grace period.

The judgment rendered against the appellant in the trial court, wherein an amount equaling the alleged benefits accruing under the policy less the premium due was awarded to appellee, is erroneous. The judgment of said court is therefore reversed and judgment here rendered denying the relief sought by the complaint filed in the court below.

Reversed and rendered.