OPINION OF THE COURT
Frederick D. Schmidt, J.
Plaintiff’s decedent entered into a health insurance contract *162 with defendant not-for-profit corporation. Although the decedent did not pay her quarterly premium on its due date of March 1, 1989, she filed a claim against the policy on March 6 of that year. While defendant paid the amount of the claim, the check was returned by the attorney for the decedent’s estate, who asked that a replacement check be issued. The defendant then determined that the decedent’s policy had in fact been terminated due to nonpayment and it refused to honor the claim. Plaintiff brought the instant suit to recover the value of the disputed claim. The court finds in favor of the defendant.
FINDINGS OF FACT
This matter was decided upon the basis of a statement of agreed facts stipulated to by both parties, and arguments presented in memoranda of law. The pertinent facts are set forth below.
The late Esther Neder was insured by defendant corporation since March 1,1987. The terms of her policy required quarterly payments of premiums to maintain coverage. Although a premium became due on March 1, 1989, she did not make this payment, or any subsequent payment.
On March 6 of that year, Neder filed a claim against her policy and received covered medical services. Despite such care, Neder died on April 5. The following day, defendant issued a check payable to Neder in the amount of $1,775 in payment on the claim.
On November 5, 1991, over two years after defendant honored the claim, the check was sent back to defendant by the attorney for the plaintiff estate. The attorney considered the check to be stale and requested that a replacement check be issued. At this time, defendant was notified of the decedent’s date of death.
On September 16, 1992, plaintiff’s attorney responded to defendant’s queries about the dates of death of Esther and William Neder, despite the fact that his letter of November 5, 1991 supplied this information.
Thereafter, on February 11, 1993, and again on June 3 of that year, defendant wrote letters to plaintiff’s attorney stating that Esther Neder’s policy had been terminated, effective March 1, 1989, on the grounds of nonpayment. As a result of defendant’s rejection of the claim, plaintiff filed the instant suit.
*163 OPINION OF THE COURT
Plaintiff’s decedent was covered by a health insurance policy issued by defendant corporation. The manner in which the premiums were to be paid was described in article I, paragraph B, subparagraph 2 of the policy, found on the second page of the contract. This language is reproduced in pertinent part. "2. How and When to Pay * * * [P]ayments are due before the start of each coverage period [i.e., quarterly, on March 1, June 1, September 1 and December 1 of each year]. To keep this Contract in effect, you must continue to pay the charges. If we don’t receive your payment within a 30 day grace period after the due date, your coverage will end automatically, and without notice, as of the due date.”
This provision is in accord with section 3216 (d) (1) (C) of the Insurance Law, which states in pertinent part as follows: "(C) grace period: A grace period of__ (insert a number not less than '7’ for weekly premium policies, '10’ for monthly premium policies and '31’ for all other policies) days will be granted for the payment of each premium falling due after the first premium, during which grace period the policy shall continue in force.”
In other words, the contract asserts that the insured has a total of 31 days in which to pay her premium as of the date it becomes due. During this time, the contract remains active, even though payment has not yet been made for the quarter. However, in the event the insured has not tendered her premium at the end of this period, then the contract will be automatically terminated without further notice, and the effective date of termination will be the date upon which the premium was initially due.
Esther Neder failed to make her required payment of $542.70 on March 1, 1989. As a result, according to the terms of the contract, she had 30 days thereafter in which to submit her premium. As of April 1 of 1989, she had still not done so, and as a result the contract allowed the cancellation of her policy effective retroactively to March 1.
It is perhaps worthy of note that the premium at issue became due prior to the need for medical coverage which prompted the claim, and that Neder was still alive at the expiration of the grace period. Since she had been making payments under this policy for two years, it is evident that she comprehended the dates such payments were due. In any event, there is no indication in the stipulated facts to suggest that Neder was incapacitated or somehow unable to appreciate the need to pay her premium.
*164 Both parties appear to accept the validity of the grace period provided, and each side recognizes that coverage remains constant during this time. However, plaintiff takes issue with defendant’s position that since Neder did not cure her nonpayment within the time granted, her contract should be considered as terminated on March 1, prior to the filing of the claim.
Plaintiff insists that section 3216 (d) (2) (G) of the aforementioned Insurance Law prevents an insurance company such as defendant from retroactively canceling a policy at the end of a grace period for nonpayment of a premium back to the date that the premium originally became due. This section of the statute is reported below in relevant part. "(G) unpaid premium: Upon the payment of a claim under this policy, any premium due and unpaid * * * may be deducted therefrom.”
According to the plaintiff’s argument, this section leaves the defendant no option but to tender payment on the claim after subtracting the value of the unpaid premium. Since section 3103 (a) of the Insurance Law declares that any contract of insurance which does not conform to the appropriate laws is to be read as if it did so comply, and since the contract at issue remained in force at the time the claim was filed, plaintiff argues that as a matter of law defendant cannot claim the policy was canceled on March 1, 1989.
Plaintiff presents no case law in its support, other than a 1971 case decided by the Texas Court of Civil Appeals called First Bankers Ins. Co. v Newell (463 SW2d 745 [1971], affd 471 SW2d 795 [Tex Sup Ct 1971]). However, this case is hardly binding authority. While plaintiff admits to discovering "a dearth of New York cases” in support of its argument, it does not appear to have considered the reason for this absence.
Although both sides grant that the insured remained covered on March 6, 1989, when the claim was filed, plaintiff does not seem to recognize the purpose of the grace period. Clearly, the time is provided to give a policyholder currently in arrears the opportunity to make a belated payment. A grace period, is not intended as a free bonus month of insurance coverage added to every contract.
The Legislature declared that a policy would remain valid until the end of such a period so as to preclude any question of coverage of claims brought during that time provided that the premium was in fact paid. In this case, no such payment was made. As a result, in accordance with both contract and statute, the defendant was empowered to cancel the contract.
If Neder had tendered the necessary premium within the grace period, then the defendant would be obligated to respond *165 to any claim filed within that grace period. However, that is not the case before the court. No payment was ever made, and this court will not hold that an insurance company must maintain its coverage regardless of whether or not premiums are paid.
The sole support provided for plaintiffs argument is its interpretation of section 3216 (d) (2) (G), reproduced above, which relates to unpaid premiums. However, this interpretation is incorrect. The language of the statute does not imply that it provides continuing coverage throughout the grace period irrespective of nonpayment. In fact, as the variously labeled portions of this section might make clear, the statutory language concerning the grace period makes no mention of procedures to be taken in the event of nonpayment, nor does the discussion of unpaid premiums refer to the mandated grace period.
The normal application of section 3216 (d) (2) (G) can be demonstrated by the following scenario. Suppose that Neder had filed a claim on February 15, 1989. On March 1, when her latest premium became due, she declined to pay it. Later, on March 20, defendant prepared to issue a check to its insured. At this time, although the defendant would be obliged to honor the claim, it could nonetheless reduce the amount by the value of the outstanding unpaid premium.
The plain language of the statute itself, as quoted by the plaintiff, substantially weakens plaintiff’s argument. The provision declares that "[u]pon the payment of a claim * * * any premium then due and unpaid * * * may be deducted therefrom” (emphasis supplied). The deliberate use of the conditional tense by the Legislature does not simply imply that the choice to do so rests entirely with the insurance company, it says exactly that flat out. Plaintiff cannot insist that "may” clearly means "must”.
If the court were to accept plaintiff’s conception of the purpose of this provision, such a decision would serve to actively discourage policyholders from making payments under the contract. According to plaintiff’s argument, the grace period guarantees an extra month of coverage at no cost to the insured. It is easy to foresee a clever policyholder who does not renew his policy in order to obtain a free month of coverage. At the end of the grace period, the insured would simply start another policy and begin the cycle all over again.
However, there is one circumstance in which this court might be inclined to accept plaintiff’s position. If it could be demonstrated to the court’s satisfaction that the given insured *166 were elderly, infirm, or otherwise incapacitated and thus unable either to make his payment or to appreciate the need for such payment, then perhaps this section should be read to require an insurance company to honor the claim and deduct the value of the unpaid premium. Nonetheless, it would be preferable for the Legislature to enact a statute which would specifically address this troubling point.
While it is true that the defendant at first paid the claim in full despite the fact of nonpayment, said defendant should not now be penalized for voluntarily doing more than it was legally bound to do. In fact, this case might not even have arisen had the plaintiff estate simply cashed the check upon receipt, rather than return the check two years later as stale. However, the court is in no position to speculate on the plaintiff’s delay in presenting the check for payment.
It is not the purpose of section 3216 (d) (2) (G) of the Insurance Law to act as a figurative foot in the door to prevent an insurance company from ever desisting from the one-sided maintenance of a contract. Plaintiff would have this court hold that insurance companies should now be required to pay out on potential million dollar claims whether or not premiums are paid, and that such companies should not be heard to complain since after all they can still subtract the value of the $600 premium. This court declines to establish such a dangerous precedent.
CONCLUSION
Plaintiff’s decedent entered into a contract for health insurance provided by defendant corporation. This decedent failed to pay her required premium on the date it was due. She did not redress this default, although a further 30 days was granted as a grace period for that purpose.
While the contract remained in force during the duration of this grace period, and a claim was filed at that time, payment on that claim was conditional upon the receipt of the overdue premium before the expiration of that period. Since no such payment was forthcoming, defendant had the right to cancel its policy with the decedent according to the terms of the contract, which unambiguously stated that such termination would be retroactively effective as of the date the amount first became due.
Since the value of the premium was not tendered during the grace period, the claim filed during that period is not binding upon defendant. The fact that coverage under the policy *167 extended throughout the grace period does not mean that the defendant could not terminate such coverage at the end of that time, and thus annul any claims presented during die interim. The purpose of a grace period is to -xtend the time in which an insured might make a required payment, not to abrogate the need for payment entirely.
Although the Legislature has granted an insurer the option of deducting the value of any overdue premiums from the payment of a claim, this convenience does not signify that a policy cannot be canceled for nonpayment at the end of the grace period, effective as of the initial due date. If such retroactive effect were held to be invalid, there would seem little purpose for either agreed due dates or subsequent grace periods. Further, the statute surely cannot be read to suggest that payment must be made when not required by the express terms of the contract.
The plaintiff cannot be said to suffer a hardship as a result of this decision. The decedent was aware of the terms of her contract, but did not tender her necessary premium on March 1, 1989, nor on any of the succeeding 30 days. Nonetheless, the defendant paid off on the claim anyway, but plaintiff sat on the check for over two years. Now, plaintiff appears to insist that the defendant repeat its earlier oversight. Plaintiff will not now be awarded a third bite of the apple.