Marcus Neal Legg appeals from a summary judgment entered by the Madison Circuit Court on his claims against Fortis Insurance Company ("Fortis") and John Alden Life Insurance Company ("John Alden") *Page 777 
of breach of contract and bad-faith refusal to pay an allegedly valid insurance claim. We affirm.
The pertinent facts in this case are undisputed. Therefore, we review the trial court's application of the law to the facts to determine whether Fortis and John Alden were entitled to a judgment as a matter of law. See Carpenter v. Davis,688 So.2d 256, 258 (Ala. 1997). No presumption of correctness attaches to the decision of a trial court on a summary-judgment motion, and our review is de novo. See Gossett v. TurinCounty Cable T.V., Inc., 594 So.2d 635, 638 (Ala. 1992).
The record reveals that on June 24, 2003, Legg executed a "Short Term Medical Enrollment Form" seeking short-term medical-insurance coverage from John Alden that would indemnify him with respect to particular medical expenses he might incur; on that form, Legg elected to pay the required initial premium of $161.96 and subsequent monthly premiums of $121.96 by means of personal checks rather than via credit card. In response, John Alden issued Legg a "Short Term Medical Certificate" providing medical-insurance coverage for a maximum period of 185 days; that certificate indicated that the insurance coverage was "administered" by Fortis. John Alden also issued Legg monthly premium-payment coupons directing that premium payments were to be made to Fortis at a post-office box in Milwaukee, Wisconsin, owned by U.S. Bank.
Under Alabama law, "disability insurance" includes insurance of natural persons against, among other things, "expense resulting from sickness." Ala. Code 1975, § 27-5-4. In Alabama, disability-insurance policies, such as the short-term health-insurance certificate issued to Legg, must contain certain provisions that are required by statute. See Ala. Code 1975, § 27-19-3(a). Among those mandatory provisions is one providing for a "grace period" for delinquent premium payments.See Ala. Code 1975, § 27-19-6. Under § 27-19-6, a disability-insurance policy with a monthly premium must contain a provision that "`[a] grace period of . . . not less than . . . "10" . . . days will be granted for the payment of each premium falling due after the first premium'" and that during the grace period "`the policy shall continue in force.'"Id. However, in contrast to various statutes pertaining to mandatory provisions of various policies of "life insurance" (see Ala. Code 1975, § 27-5-2), a disability-insurance policy need not contain language permitting deduction of unpaid premium payments from benefits otherwise payable under a particular policy if a claim should arise during the grace period. Compare Ala. Code 1975, § 27-19-6, with Ala. Code 1975, §§ 27-15-7,27-16-4, and 27-17-3.
In response to Legg's intent to pay his premium on a monthly basis, an "Optional Monthly Premium Rider" amending the short-term health-insurance certificate was issued to Legg. That rider reiterated that the certificate was "billed monthly for [y]our convenience and to make the payments more affordable" and that Legg's insurance protection would remain in force for up to 185 days "as long as you pay your monthly premium to John Alden Life Insurance Company or its administrator as it becomes due." Also, in conformity with § 27-19-6, the rider contained the following provision:
 "GRACE PERIOD: There is a grace period of 10 days for the payment of each premium due after the first premium. The policy or certificate will stay in force during this grace period. If the premium is not received at Our Home *Page 778 Office by the end of the grace period, this policy or certificate will lapse."
(Emphasis added.)
It is undisputed that Legg made monthly premium payments in a timely manner so as to extend his coverage through at least October 28, 2003, and that a monthly premium payment was due on October 29, 2003. Legg did not make that payment on or before its due date, thereby triggering the 10-day grace period as set forth in the rider to the certificate and as mandated by § 27-19-6; that period extended to November 8, 2003. On October 31, 2003, during the grace period, Legg underwent hernia surgery and incurred medical expenses incident thereto. Legg testified at his deposition that on November 7, 2003, one day before the expiration of the grace period, he sent a premium check via regular mail; however, it is undisputed that that check was not received until November 17, 2003, after the grace period had expired, and Legg admitted that he had no proof of having mailed the check. Fortis refunded that premium payment and a subsequent payment received from Legg on December 15, 2003, noting in its letters to Legg that the last date of coverage had been October 28, 2003, and that no premium payments had been received within 10 days of October 29, 2003. Moreover, Legg's claim for medical benefits under the policy with respect to the October 31, 2003, surgery was denied on the basis that the certificate had lapsed.
Legg filed a two-count complaint in the trial court naming John Alden and Fortis as defendants. In that complaint, Legg asserted that the defendants had breached the certificate by failing to pay a claim for benefits arising out of the October 31, 2003, surgery and that the defendants had tortiously acted in bad faith in allegedly failing to investigate and pay that claim; he sought damages of $20,074.75 as to each count. The cause was removed to federal court, but it was later remanded. The defendants then filed a motion for a summary judgment, which was supported by excerpts from Legg's deposition transcript, evidentiary exhibits submitted at that deposition, and an affidavit of one of Fortis's supervisory employees. Legg filed a response in opposition, supported by his own affidavit. After a hearing, the trial court entered a summary judgment in favor of the defendants.
The fundamental question presented by the appeal, as framed by the parties' submissions in connection with the defendants' summary-judgment motion, is whether Legg's claim for benefits as to his October 31, 2003, surgery was properly denied. Because that question is due to be answered in the affirmative as a matter of law, as is demonstrated in this opinion, the trial court did not err in entering its summary judgment.
A "grace period," such as that mandated by § 27-19-6 and provided for under the rider to the certificate issued to Legg, is, at bottom, "[a] period of extra time allowed for taking some required action (such as making payment) without incurring the usual penalty for being late." Black's LawDictionary 717 (8th ed. 2004). Stated another way, a grace period allows an otherwise-tardy performance of an act to be legally effective as if it had been performed in a timely manner. However, as a noted treatise on the law of insurance notes, a provision for a grace period "does not change the date when the premium is due"; thus, "a grace provision does not contemplate free insurance, but is merely an extension of an opportunity to pay, and ultimate payment for the period is expected." 5 Lee R. Russ Thomas F. Segalla, Couch onInsurance § 76:57 (3d ed. 1996). Couch onInsurance further points out that when a loss occurs during a grace *Page 779 
period, "it is no bar to recovery that the premiums have not been paid, provided that they are paid prior to the expiration of the . . . grace period, at least where such was the intent of the parties." Id. at § 76:58. The prevailing rule can thus be summarized:
 "A statute providing for a mandatory grace period protects an insured whose policy would otherwise lapse upon a failure to pay a premium when due, but if the insurance company does not receive the premium within the grace period, the policy lapses as of the date the premium was due or the policy expired, and the insurer may refuse to provide retroactive coverage."
44 Am.Jur.2d Insurance § 841 (2003) (emphasis added and footnotes omitted); see also id. at § 843 (noting that other than as to life-insurance policies, insurers are not liable for any losses during grace periods when premiums are not paid or tendered during the pertinent grace period).
As the defendants point out in their brief on appeal, New York, like Alabama, requires the inclusion of a grace-period provision in health-insurance policies providing that such policies will "continue in force" during the applicable grace period; however, in Zaitschek v. Empire Blue Cross Blue Shield, 166 Misc.2d 161, 632 N.Y.S.2d 434
(Civ.Ct. 1995), aff'd, 172 Misc.2d 864, 662 N.Y.S.2d 171
(Sup. 1997), New York's grace-period statute was interpreted so as not to require an insurer to pay a health-insurance claim arising during a grace period when a premium payment was never paid. In Zaitschek, it was contended that the pertinent statute barred the insurer from "retroactively canceling [its] policy at the end of [the] grace period for nonpayment of [the] premium back to the date that the premium originally became due." 166 Misc.2d at 164,632 N.Y.S.2d at 435. That contention was, however, soundly rejected by the court in Zaitschek, which held that the grace period was provided "to give a policy-holder currently in arrears the opportunity to make a belated payment" and not in order to bestow "a free bonus month of insurance coverage added to every contract." 166 Misc.2d at 164, 632 N.Y.S.2d at 436; accordMakastchian v. Oxford Health Plans, Inc., 281 A.D.2d 197,198, 721 N.Y.S.2d 351, 352 (2001) ("it is only after grace period expires and premiums have not been paid that coverage terminates retroactively to the end of last month for which the subscriber did pay").
On appeal, Legg cites, for the first time, a case decided by our predecessor court, Blue Cross-Blue Shield of Alabama v.Colquitt, 42 Ala.App. 471, 168 So.2d 251, cert.denied, 277 Ala. 696, 168 So.2d 256 (1964), that he contends supports the proposition that his claim was valid and should have been paid despite his failure to pay the premium due on October 29, 2003, because his claim arose during the grace period. We assume, without deciding, that Legg's reliance upon Colquitt on appeal despite his failure to bringColquitt to the attention of the trial court does not amount to an improper assertion of a new theory on appeal than that advanced by Legg in the trial court. See Home Indent.Co. v. Reed Equip. Co., 381 So.2d 45, 50 (Ala. 1980) ("[t]he rule requiring adherence to the theory relied on below . . . does not mean the parties are limited in the appellate court to the same reasons or arguments advanced in the lower court upon the matter or question in issue"); but cf.Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 50
n. 1 (Ala. 2003) (refusing to consider argument that default judgment should be vacated because defendant adduced evidence satisfying three-factor analysis enunciated in Kirtland v.Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600 (Ala. 1988), when defendant did not cite *Page 780 Kirtland in the trial court nor specifically argue that its evidence satisfied the three-factor analysis).
In Colquitt,' an insured under one group policy of health insurance changed employers and requested a transfer from the former employer's group to the new employer's group, although the insured continued to remit premium payments through his former employer for several months. However, the insured failed to remit a premium payment due on February 15, 1960. The pertinent insurance contract provided for a 10-day grace period and also provided that the insurer would not be liable for payment as to any hospital services rendered to an insured after the due date unless the premium was paid within the grace period. The Alabama Court of Appeals affirmed (conditioned upon a remittitur) a judgment in favor of the insured on his breach-of-contract claim, rejecting the insurer's argument that no coverage was in effect:
 "It is argued . . . that the forfeiture clause of the contract came into operation because the premium due February 15 was never paid. The loss (to use insurance terminology) which occurred on February 20, it is argued, was after the expiry of the term of the policy. Under cases such as Inland Mutual Ins. Co. v. Hightower, 274 Ala. 52, 145 So.2d 422
[(1962)], a new consideration moving from the insured to the underwriter would be necessary to support an extension of the term of the contract.
 "This would be valid except for the fact that the contract provides for a ten-day grace period. Our courts are committed to the rule that when a loss occurs within the grace period, giving rise to an obligation by the underwriter to the insured for an unencumbered sum at least equal to the unpaid premium, then the premium is deemed to have been paid and the term of the policy is appropriately extended. McMaster v. New York Life Ins. Co., 183 U.S. 25, 22 S.Ct. 10, 46 L.Ed. 64 [(1901)]; Kubala v. United States, 5 Cir., 210 F.2d 943
[(1954)], citing with approval United States v. Morrell, 4 Cir., 204 F.2d 490 [(1953)]; Cilek v. New York Life Ins. Co., 97 Neb. 56, 149 N.W. 1071 [(1914)]; Williston on Contracts, 3d Ed., § 908.
 "In Equitable Life Assur. Soc. of United States v. Roberts, 226 Ala. 8, 145 So. 157 [(1932)], the court recognized this principle, stating that, with respect to otherwise undesignated dividends, there is a legal obligation on the `insurer' to apply such dividends to the payment of the premium in order to avoid forfeiture of the policy.
 "Again in Benefit Ass'n Ry. Employees v. Bray, 226 Ala. 444, 147 So. 640 [(1933)], accruing sick benefits were applied to avoid lapse for nonpayment of premiums, and Foster, J., stated, as a general rule, `that an insurance policy cannot be canceled by the insurance carrier for nonpayment of premiums when it has a credit to the insured of an amount equal to such premium otherwise unappropriated by the insured.' See also Prudential Ins. Co. v. Gray, 230 Ala. 1, 159 So. 265 [(1934)]."
Colquitt, 42 Ala.App. at 474-75, 168 So.2d at 254-55
(emphasis added).
The assumption made by the Court of Appeals inColquitt was that a loss occurring during a grace period provided for in a disability-insurance policy "g[ave] rise to an obligation by the underwriter to the insured" to pay the claim, thereby somehow creating a "credit" from which the delinquent premium could be retroactively paid (via a setoff) under the authority of the Alabama caselaw cited. That assumption was erroneous. As this court subsequently noted inBlue Cross-Blue Shield of *Page 781 Alabama v. Craig, 46 Ala.App. 352, 242 So.2d 398
(Civ. 1970), in Colquitt "there was no `credit' held by the insurer for the benefit of the insured at the time the premium became delinquent, nor at the time services were rendered on behalf of insured, which could have been used to pay the delinquent premium." 46 Ala.App. at 356,242 So.2d at 402 (emphasis added). In other words, Craig stands for a proposition contrary to that espoused in Colquitt:
the mere occurrence of a loss during the grace period thatmight have been payable under a particular policy of disability insurance does not thereby excuse the insured's failure to make the tardy premium payment. Thus, this court, in effect, rejected the holding in Colquitt more than 35 years ago.
The Alabama Supreme Court has never cited Colquitt as authority, nor does its denial of certiorari review inColquitt "necessarily indicate [that court's] approval of all the language used, nor of the statements of law made in"Colquitt. Ex parte Opelika Coca-Cola Bottling Co.,286 Ala. 460, 460, 241 So.2d 331, 332 (1970). Similarly, any action by the legislature to reenact laws governing disability-insurance grace periods since Colquitt was decided cannot properly be said to have indicated an intent to adopt the interpretation in Colquitt of the effect of grace-period provisions. See Town of Killen v.Clemmons, 963 So.2d 670, 673 n. 3 (Ala.Civ.App. 2007). "Although we have a healthy respect for the principle of stare decisis, we should not blindly continue to apply a rule of law that does not accord with what is right and just," Ex parteState Farm Fire Cas. Co., 764 So.2d 543, 545
(Ala. 2000), and it is not "right and just" that an insured receive an extra period of coverage at no cost. SeeZaitschek, 166 Misc.2d at 165, 632 N.Y.S.2d at 436. Accordingly, we agree with the defendants thatColquitt should not be followed; to the extent thatColquitt is inconsistent with our opinion in this case, Colquitt is overruled.
Under the facts of record adduced in connection with the defendants' summary-judgment motion, Legg could not, as a matter of law, have prevailed on his breach-of-contract claim. Coverage was promised to Legg "only as long as [he paid his] monthly premium to John Alden Life Insurance Company or its administrator as it becomes due," and Legg failed to cause a monthly premium payment, due on or before October 29, 2003, to be transmitted to the appropriate post-office box by the due date for that payment or by the end of the 10-day grace period mandated by § 27-19-6 and set forth in the rider to his certificate. Since "the premium [wa]s not received at [John Alden's] Home Office by the end of the grace period," the defendants properly treated the certificate as having lapsed as of October 29, 2003, and correctly deemed any medical procedures performed upon Legg on October 31, 2003, not to be covered.[1] Thus, the trial court did not err in entering a summary judgment in favor of the defendants as to Legg's breach-of-contract claim. Moreover, because "one who cannot prove [entitlement] to benefits under an insurance policy cannot recover on a bad-faith claim," Acceptance Ins. Co.v. Brown, 832 So.2d 1, 16 (Ala. 2001), we conclude that the defendants were also entitled to a judgment as a *Page 782 
matter of law with respect to Legg's bad-faith tort claim.See also Auto-owners Ins. Co. v. Abston,822 So.2d 1187, 1193 (Ala. 2001).
Based upon the foregoing facts and authorities, the summary judgment entered in favor of John Alden and Fortis on Legg's claims is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] Further, the defendants acted within their rights by returning Legg's tardy premium payments. See Carolina Cas.Ins. Co. v. Miss Deanna's Child Care-Med Net, L.L.C.,869 So.2d 1169, 1173 (Ala.Civ.App. 2003) (noting that under Alabama law, "when an insurer accepts a premium payment from an insured with knowledge that an otherwise-covered occurrence has happened during a period of lapse," the insurer may "return the premium for the lapsed period").