THOMAS, Judge.
 

 Fluid Services, Inc., d/b/a Pirtek (“Pir-tek”), purchased a commercial general-liability insurance policy from Burlington Insurance Company. The policy was effective from March 14, 2003, to March 14, 2004. Pirtek paid a $15,000 provisional premium to Burlington. According to the
 
 *967
 
 policy, Burlington had the right to examine Pirtek’s books and records and recalculate any premium due based on that audit. Upon the expiration of the policy, Pirtek did not renew its policy with Burlington, having found alternative coverage at a more competitive rate. Burlington audited Pirtek and assessed an additional premium of $14,800 for the coverage period. Pirtek refused to pay the additional premium, and Burlington sued Pirtek in April 2005, alleging breach of contract. Pirtek answered and asserted breach-of-contract, fraud, and misrepresentation counterclaims, which Burlington later answered.
 

 Burlington moved for a summary judgment on its breach-of-contract claim, seeking an award of the additional premium; it attached the policy and the audit report as exhibits. The trial court granted Burlington’s summary-judgment motion on November 15, 2006; however, the trial court set aside that judgment on Pirtek’s timely postjudgment motion. Pirtek then responded to Burlington’s motion for a summary judgment and sought to have Burlington’s action dismissed on the basis of Ala.Code 1975, § 10-2B-15.02, commonly referred to as the “door-closing” statute,
 
 see Casa Inv. Co. v. Boles,
 
 931 So.2d 53, 57 (Ala.Civ.App.2005), because Burlington is a foreign insurance company
 
 [1]
 
 that does not have a certifícate of authority to do business in this state. After Burlington responded and both parties presented evidence in support of their respective positions, the trial court treated Pirtek’s motion to dismiss as a summary-judgment motion and entered a judgment on September 10, 2007, declaring that Burlington was barred from bringing its action. In its judgment, the trial court determined that the door-closing statute and Ala.Code 1975, § 27-10-3(a), barred Burlington’s action because Burlington was a foreign company lacking a certificate of authority and because the insurance policy Burlington issued to Pirtek did not qualify as a surplus-lines insurance policy because it lacked an endorsement required by Alabama’s surplus-lines insurance law. The trial court also determined that the insurance policy was void. The trial court granted Pirtek’s motion to dismiss its counterclaims against Burlington on October 10, 2007, which made the summary judgment final. After its postjudgment motion was denied, Burlington appealed.
 

 Burlington argues that the trial court erred in concluding that it was barred from instituting this action by § 10-2B-15.02(a). That statute provides:
 

 “(a) A foreign corporation transacting business in this state without a certificate of authority or without complying with Chapter 14A of Title 40 may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.”
 

 Burlington first argues that the application of § 10-2B-15.02 to preclude its enforce
 
 *968
 
 ment of the insurance policy is prevented by the fact that Burlington is engaged in interstate commerce. As Burlington suggests, by virtue of the Commerce Clause, U.S. Const., art. I, § 8, cl. 3, Alabama generally cannot preclude the conduct of interstate business by foreclosing access to state courts by out-of-state companies conducting that business.
 
 See Cornwall & Stevens Southeast, Inc. v. Stewart,
 
 887 F.Supp. 1490, 1492 (M.D.Ala.1995);
 
 Trade-Winds Envtl. Restoration, Inc. v. Brown Bros. Constr., L.L.C.,
 
 999 So.2d 875, 877 (Ala.2008); and
 
 North Alabama Marine, Inc. v. Sea Ray Boats, Inc.,
 
 533 So.2d 598 (Ala.1988). However,
 
 “the
 
 McCarran Ferguson Act[, 15 U.S.C. § 1011 et seq.,] exempts the insurance industry from Commerce Clause restrictions.”
 
 Metropolitan Life Ins. Co. v. Ward,
 
 470 U.S. 869, 880, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1984). As explained by the United States Supreme Court:
 

 “The McCarran-Ferguson Act was passed in the wake of
 
 United States v. South-Eastern Underwriters Assn., 322
 
 U.S. 533 (1944), which held that insurance is ‘commerce’ within the meaning of the Commerce Clause. Prior to
 
 Southr-Eastem Underwriters,
 
 insurance was not considered to be commerce within the meaning of the Commerce Clause,
 
 New York Life Ins. Co. v. Deer Lodge County,
 
 231 U.S. 495 (1913);
 
 Paul v. Virginia,
 
 8 Wall. 168 (1869), and thus ‘negative implication from the commerce clause was held not to place
 
 any limitation
 
 upon state power over the [insurance] business.’
 
 Prudential Ins. Co. v. Benjamin,
 
 328 U.S. 408, 414 (1946) (emphasis added). Believing that the business of insurance is ‘a local matter, to be subject to and regulated by the laws of the several States,’ H.R. Rep. No. 143, 79th Cong., 1st Sess., 2 (1945), Congress explicitly intended the McCarran-Ferguson Act to restore state taxing and regulatory powers over the insurance business to their pre-
 
 South-Eastern Underwriters
 
 scope. H.R. Rep. No. 143,
 
 supra,
 
 at 3; see
 
 SEC v. National Securities, Inc.,
 
 393 U.S. 453, 459 (1969);
 
 Maryland Casualty Co. v. Cushing,
 
 347 U.S. 409, 412-413 (1954).”
 

 Western & Southern Life Ins. Co. v. State Bd. of Equalization of California, 451
 
 U.S. 648, 653-54, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). Thus, Alabama can preclude an insurance company that lacks a certificate of authority from enforcing its contracts in the courts of this state without offending the Commerce Clause.
 

 Burlington further relies on the “equity” provision of § 10-2B-15.02 to urge reversal of the trial court’s judgment. According to Burlington, it is not equitable for Pirtek to have received insurance coverage for less than the premium due under the policy. Burlington relies on a statement in
 
 Legg v. Fortis Insurance Co.,
 
 978 So.2d 776, 781 (Ala.Civ.App.2007), which reads: “[I]t is not ‘right and just’ that an insured receive an extra period of coverage at no cost.” We find
 
 Legg
 
 inapposite here, however, because it did not involve an application of the door-closing statute but instead involved whether an insured should receive coverage for an accident that occurred during the 10-day grace period for renewal when the insured failed to pay the premium payment by the end of that grace period.
 
 Legg,
 
 978 So.2d at 781. Application of the door-closing statute in any instance would result in the potential for one side to benefit; thus, we cannot agree that its application in this circumstance is particularly inequitable. Even if we were to find application of the door-closing statute inequitable under these circumstances, Burlington would still not be permitted to bring an action to enforce its policy under Alabama law.
 

 
 *969
 
 In addition to the general “door-closing statute,” Alabama law specifically precludes unauthorized insurance companies from instituting actions on their insurance policies. § 27-10-3(a). Alabama requires that an insurer be authorized to transact business in this state by securing a certificate of authorityfrom the Commissioner of Insurance. Ala.Code 1975, § 27-3-1. An insurer that is not authorized to transact business in this state because it does not possess a certificate of authority is an “unauthorized insurer.” Ala.Code 1975, § 27-1-2(10). Section 27-10-3(a) provides that an unauthorized insurer may not institute an action “in this state to enforce any right, claim, or demand arising out of any insurance transaction in this state .... ” Burlington argues that, although it does not have a certificate of authority from the commissioner, it is not an “unauthorized insurer” because it meets the requirements of § 27-10-26 and is eligible to provide surplus-lines coverage in Alabama. Indeed, § 27 — 10—3(b)(2) states that it does not apply to “[s]urplus lines coverages written under this chapter.”
 

 “Surplus lines insurance coverage is issued when insurance coverage cannot be procured from authorized insurers on terms acceptable to the insureds; in such an event, certain unauthorized insurers may sell insurance to Alabama citizens through a properly licensed surplus lines broker. See § 27-10-20.”
 
 Custard Ins. Adjusters, Inc. v. Youngblood,
 
 686 So.2d 211, 213 (Ala.1996). There are several requirements that an unauthorized insurance company and a surplus-lines broker must meet in order for them to be able to provide and to procure, respectively, surplus-lines insurance coverage.
 
 See
 
 Ala. Code 1975, §§ 27-10-24 and 27-10-26. None of those requirements are at issue in the present case.
 

 Instead, the issue is whether the insurance policy in question is a surplus-lines insurance policy. Pirtek argues that, despite Burlington’s eligibility as a surplus-lines insurance provider, it does not fall within the surplus-lines exception to § 27-10-3 because the insurance policy Burlington issued to Pirtek does not contain the endorsement required by § 27-10-22. That section requires the following:
 

 “ ‘Every insurance contract procured and delivered as a surplus line coverage pursuant to this article shall be initialed by, or bear the name and license number of, the surplus line broker who procured it and shall have stamped upon it the following:
 

 “‘This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law.’ ”
 

 Pirtek argues that the insurance policy issued by Burlington without this required endorsement is not a surplus-lines insurance policy issued “in accordance with this article.” Ala.Code 1975, § 27-10-23.
 
 [2]
 
 Based on this contention, Pirtek argues that Burlington remains an unauthorized insurer and is not entitled to sue for the additional premium it assessed under the policy.
 

 Burlington argues that § 27-10-22 requires the broker to endorse the policy and that, because a surplus-lines broker is considered an agent of the insured — in this case, Pirtek — Burlington cannot be held responsible for the failure to include the required endorsement. Although Burlington is correct in arguing that, under
 
 *970
 
 Alabama law, brokers are often considered agents of the insured,
 
 see Ballard v. Lee,
 
 671 So.2d 1368, 1372 (Ala.1995), overruled on other grounds by
 
 State Farm Fire & Casualty Co. v. Owen,
 
 729 So.2d 834 (Ala.1998); and
 
 Gulf Gate Mgmt. Corp. v. St. Paul Surplus Lines Ins. Co.,
 
 646 So.2d 654, 659 (Ala.1994), it is incorrect in its assertion that § 27-10-22 places the duty to endorse the contract on the broker. The word broker appears in that section only in the context of requiring that the broker’s initials or name and license number appear on the surplus-lines insurance contract. The statute does not direct any particular person or entity to make the required endorsement; it only directs that it “shall [be] stamped upon” the contract. Certainly, the broker could make the endorsement; however, the unauthorized insurer who desires to enforce its insurance contracts in Alabama courts has a clear incentive to be certain that the policy includes the required endorsement. “The Legislature adopted the provisions of the ‘unauthorized insurers and surplus lines’ chapter in order to protect Alabama citizens from insurers who are not properly authorized to operate in the state,”
 
 Young-blood,
 
 686 So.2d at 216, and we see no reason to withdraw that protection by laying the blame for the lack of the endorsement on the insured.
 
 [3]
 

 Burlington further argues that the lack of the required endorsement does not void the policy, as the trial court concluded it did. We agree with Burlington that the policy is not void.
 
 See
 
 Ala.Code 1975, § 27-10-1 (c) (“This section shall not be deemed to render invalid, as between the parties thereto, any insurance contract entered into in violation of this section.”). However, despite that fact, the lack of the required endorsement renders the trial court’s ultimate conclusion — that Burlington cannot maintain an action in this state — correct.
 

 Because § 27-10-22 uses the word “shall,” there is no question that the endorsement is a mandatory requirement of Alabama’s surplus-lines insurance law.
 
 Ex parte Prudential Ins. Co. of America,
 
 721 So.2d 1135, 1138 (Ala.1998) (“The word ‘shall’ is clear and unambiguous and is imperative and mandatory.”). As explained in
 
 Black’s Law Dictionary
 
 1375 (6th ed.1990), use of the word “shall” denotes a requirement or an obligation that something be done:
 

 “As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term ‘shall’ is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means ‘must’ and is inconsistent with a concept of discretion.”
 

 Thus, the endorsement of the policy was absolutely required by the statute. The lack of that endorsement, then, prevents the policy from being considered a surplus-lines policy procured in accordance with Alabama’s surplus-lines insurance law and renders the policy an insurance policy from an unauthorized insurer. As we have previously explained, § 27-10-3 prohibits an unauthorized insurer from maintaining an action to enforce its insurance contract in this state. We therefore affirm the trial court’s judgment.
 

 AFFIRMED.
 

 
 *971
 
 THOMPSON, P.J., and PITTMAN, J., concur.
 

 BRYAN and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . Foreign insurance companies are those insurance companies that are "formed under the laws of any jurisdiction other than this state.” Ala.Code 1975, § 27-1-2(7). "Alien insurers” are those insurers "formed under the laws of any country other than the United States of America, its states, districts, territories, and commonwealths.” § 27-1-2(8). Foreign insurers also include alien insurers. § 27-1-2(7).
 

 [2]
 

 . Section 27-10-23 reads: "Insurance contracts procured as 'surplus line’ coverages from unauthorized insurers in accordance with this article shall be fully valid and enforceable as to all parties and shall be given acceptance and recognition in all matters and respects to the same effect and extent as like contracts issued by authorized insurers."
 

 [3]
 

 . Based on our decision that we will not impute the lack of the required endorsement to the insured, whom the surplus-lines insurance law was designed to protect, we will not address Burlington’s argument, raised in its reply brief, that Pirtek has unclean hands because of the broker’s failure to properly endorse the policy.