On Application for Rehearing
The opinion of July 26, 1996, is withdrawn and the following opinion is substituted therefor:
The issue in this interlocutory appeal by Custard Insurance Adjusters, Inc., is whether § 27-10-2(b), Ala. Code 1975, is unconstitutional *Page 213 
on the basis that it discriminates against insurance adjusters.[1]
In November 1987, Youngblood Trucking Company ("Youngblood"), by and through its president Randy Youngblood, purchased automobile and truck liability insurance through Jack Eyer, an insurance agent for Junkins-Yarbrough Corporation ("JYC"). The insurer issuing the policy was Fiduciary Indemnity Insurance Group, Ltd. ("Fiduciary"). Eyer applied for the Fiduciary insurance policy through Myrtle Beach Underwriters, Inc., located in South Carolina, and Myrtle Beach was listed as the agent on the policy. The policy period was from November 25, 1987, through November 27, 1988, and the policy provided coverage of $500,000 per accident.
When Eyer applied for the policy, he knew that neither Fiduciary nor Myrtle Beach was authorized to transact insurance business in Alabama either as a foreign insurer complying with § 27-3-4 or as a surplus lines carrier.
According to Eyer, he believed that the policy could be written through a licensed surplus lines insurance broker in Alabama. However, neither Eyer, Fiduciary, nor Myrtle Beach attempted to obtain surplus lines insurance coverage through a licensed surplus lines broker. However, Eyer eventually attempted to obtain surplus lines insurance coverage after an accident had occurred involving a Youngblood truck.
Surplus lines insurance coverage is issued when insurance coverage cannot be procured from authorized insurers on terms acceptable to the insureds; in such an event, certain unauthorized insurers may sell insurance to Alabama citizens through a properly licensed surplus lines broker. See §27-10-20. To become a properly licensed surplus lines broker, a person must be licensed as a resident insurance agent or broker and be deemed by the insurance commissioner to have sufficient experience in the insurance business; that person must apply for a surplus lines coverage license, pay a licensing fee, and obtain a bond. § 27-10-24. A surplus lines broker has certain duties he or she must comply with before issuing surplus lines coverage, including ascertaining the financial soundness of the unauthorized insurance company. Dutton v. Chester F. RainesAgency, Inc., 475 So.2d 545 (Ala. 1985); § 27-10-26.
On May 5, 1988, a Youngblood truck was involved in a collision with an automobile; the occupant in the automobile, Christine Wiley, was killed. Subsequently, Myrtle Beach used its in-house adjusting service, Beach Claim Services, to find an adjuster in Alabama. Beach Claim Services contacted Custard, and Custard investigated and adjusted the claim.
In June 1988, Eyer, knowing that the Fiduciary policy was not authorized, contacted McGriff, Seibels Williams ("McGriff"), a licensed surplus lines broker in Alabama, asking that it pay the surplus lines insurance tax on the Fiduciary liability policy issued to Youngblood. Eyer did not tell McGriff that there had been an accident covered by the policy. Also, Eyer personally paid the surplus lines tax on the policy.
The administrator of Wiley's estate sued Youngblood, alleging wrongful death. Fiduciary and Myrtle Beach were added as real parties in interest, pursuant to Rule 17, Ala.R.Civ.P. Fiduciary retained counsel to defend its position, and Beach Claim Services, acting on behalf of Myrtle Beach, hired counsel to represent Youngblood. The lawsuit resulted in a $750,000 judgment in favor of Wiley's estate. Fiduciary refused to pay the judgment. In 1990, Youngblood sued Fiduciary, Myrtle Beach, Eyer, JYC, and Custard for damages based on Fiduciary's failure to pay its claim under the policy. Custard is the only defendant involved in this appeal.
Youngblood filed a motion for a summary judgment, alleging that Custard had undertaken to investigate and adjust the loss on behalf of Fiduciary, an unauthorized insurance company. Therefore, Youngblood contended, Custard was liable pursuant to § 27-10-2(b). Youngblood also claimed that the *Page 214 
Fiduciary policy was not lawfully written as surplus lines insurance coverage pursuant to the statutory provisions regarding "unauthorized insurers and surplus lines," Title 27, Chapter 10, §§ 27-10-1 through -56.
Custard moved for a summary judgment, claiming that it had not been involved in the solicitation, procurement, or negotiation of the Fiduciary policy issued to Youngblood and that it had become involved only after the insurance coverage had been purchased. Custard asserted that § 27-10-2(b) violates the Alabama Constitution. Custard argues that § 27-10-2(b) discriminates against adjusters in an arbitrary, unreasonable, and unnecessary manner and is therefore unconstitutional. Specifically, Custard argues that the statute creates unequal governmental classifications that are not rationally related to any legitimate state purpose. Custard also argues that §27-10-2 is ambiguous, unduly vague, unreasonable, and overbroad, and therefore violates the right to due process.
The trial court denied Custard's summary judgment motion and granted a partial summary judgment in favor of Youngblood and against Custard. In its order, the trial court held (1) that Youngblood's liability policy with Fiduciary did not qualify as a permissible surplus lines insurance policy, (2) that Custard had undertaken to investigate and adjust the claim on behalf of Fiduciary, and (3) that Youngblood had suffered a loss due to Custard's actions regulated or restricted by § 27-10-2(b). The trial court held that Youngblood was entitled to a judgment as a matter of law on the question of Custard's liability under §27-10-2(b), with a jury to determine the amount of damages.
We set out here the applicable sections of the "unauthorized insurers and surplus lines" chapter. Section 27-10-2, entitled "Liability of persons violating section 27-10-1; liability of adjusters," provides:
 " (a) Any person who in this state willfully represents or aids an unauthorized insurer in violation of section 27-10-1 shall, in addition to any other applicable penalty, be liable for the full amount of any loss sustained by the insured under any such contract and for the amount of any premium taxes which may be payable under section 27-10-35 by reason of such contract.
 "(b) Any adjuster who, directly or indirectly, enters into an investigation or adjustment of any loss arising under a contract of insurance or annuity issued by an unauthorized insurer and covering at time of issuance a subject of insurance resident, located or to be performed in this state shall be liable for the full amount of any loss suffered by the insured under such contract. The commissioner may, after hearing, revoke the license of such an adjuster. This subsection does not apply as to surplus lines contracts lawfully written under this chapter, or exempted under section 27-10-34, or to insurance contracts procured by the insured on his own behalf and on which the tax is paid as required by section 27-10-35 or to transactions as to which the insurer is not required to have a certificate of authority."
Section 27-10-1 ("Representing or aiding unauthorized insurer not allowed; exceptions; validity of contracts") provides:
 " (a) No person shall in this state, directly or indirectly, act as an agent for, or otherwise represent or aid on behalf of another, any insurer not then authorized to transact such insurance in this state in the solicitation, negotiation or effectuation of insurance or annuity contracts, forwarding of applications, delivery of policies or contracts, inspection of risks, fixing of rates, investigation or adjustment of losses, collection of premiums or in any other manner in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this state.
"(b) This section shall not apply to:
 "(1) Acceptance of service of process by the commissioner under section 27-10-52;
 "(2) Surplus lines insurance or coverage specified in section 27-10-34 and other transactions as to which a certificate of authority is not required of an insurer;
 "(3) Adjustment of losses as authorized in section 27-10-35; *Page 215 
 "(4) Transactions for which a certificate of authority to do business is not required of an insurer under the laws of this state;
 "(5) Reinsurance effectuated in accordance with this title; or
 "(6) The property and operations of the shipbuilding and/or ship repair industry engaged in interstate or foreign commerce and vessels, cargoes, watercraft, piers, wharves, graven docks, dry-docks, marine railways and building ways, commonly known as wet marine."
 Equal Protection
Custard argues that § 27-10-2(b) treats insurance adjusters in a manner different from the manner in which § 27-10-2(a) treats insurance agents and brokers. Custard argues that the statute applies a "willful" standard for imposing liability on insurance agents and brokers who solicit business from unauthorized insurers, but that, in contrast, § 27-10-2(b) applies a "no-fault" standard for imposing liability on adjusters. Custard argues that the different standard of treatment for adjusters is not rationally related to any legitimate state interest. It argues that agents and brokers are the ones more probably culpable because they are likely to have been involved in soliciting unauthorized insurers.
As to Custard's equal protection argument under the Alabama Constitution, we note that this Court has determined that §§ 1, 6, and 22 of the Declaration of Rights of the Alabama Constitution combine to guarantee equal protection under the laws of Alabama. Moore v. Mobile Infirmary Ass'n, 592 So.2d 156
(Ala. 1991).
 "However, the legislature may, in the exercise of its police power, create reasonable classifications in order to eradicate or ameliorate what it perceives to be a social evil. In reviewing the constitutionality of such legislation, the sole function of the judiciary is to determine whether, in the exercise of its police power, the legislature has 'unreasonably' encroached upon 'private rights' vouchsafed to the people of this state by the Constitution.
 "The critical inquiry thus becomes 'whether the limitation imposed [on private rights] is . . . one whose purpose and effect go no further than [to] throw reasonable safeguards in the public interest around the exercise of the right.' In addition, 'there must be some reasonable relation to the regulation and to the ends to be attained.' The legislature may not, in the reasonable exercise of its police power, create classifications 'to prevent evils of a remote or highly problematical character. Nor may its exercise be justified when the restraint imposed upon the exercise of a private right is disproportionate to the amount of evil that will be corrected.' Therefore, whether the classifications created under [the statutory scheme in issue here] represent a reasonable exercise of legislative power depends on whether they are reasonably related to the stated objective, and on whether the benefit sought to be bestowed upon society outweighs the detriment to private rights occasioned by the statute."
Moore, 592 So.2d at 165-66 (citations omitted).
The insurance business is affected with a public interest, and it is within the police power of the state to govern and regulate insurance companies. Hood v. Prudential Ins. Co. ofAmerica, 460 So.2d 1227 (Ala. 1984), appeal after remand,522 So.2d 265 (Ala. 1988).
The United States Supreme Court has recognized the purpose of statutes regulating the insurance business as:
 "regulations designed and reasonably adapted to protect the public from fraud, misrepresentation, incompetence and sharp practice which falls short of minimum standards of decency in the selling of insurance by personal solicitation and salesmanship. That such dangers may exist, may even be widely prevalent in the absence of such controls, is a matter of common knowledge and experience. And no argument is needed to show that these evils are most apt to arise in connection with the activities of the less reliable and responsible insurers, as well as insurance *Page 216 
brokers or salesmen, and vitally affect the public interest."
Robertson v. California, 328 U.S. 440, 447, 66 S.Ct. 1160,1164, 90 L.Ed. 1366 (1946).
We disagree with Custard's equal protection argument. First, we do not agree that the statute imposes different standards for agents and brokers as opposed to adjusters. The Legislature adopted the provisions of the "unauthorized insurers and surplus lines" chapter in order to protect Alabama citizens from insurers who are not properly authorized to operate in the state. Consistent with that purpose, the Legislature imposed certain duties on surplus lines brokers seeking to lawfully aid the unauthorized insurers. For example, the surplus lines broker must check the financial soundness of the unauthorized insurer, so that a person does not end up with an unenforceable insurance policy. § 27-10-26. Also consistent with the legislative purpose of the Act, the statute provides penalties for those agents and brokers who do not comply with the statute. Specifically, "[a]ny person who in this statewillfully represents or aids an unauthorized insurer in violation of section 27-10-1" shall be liable for penalties. §27-10-2(a). Section 27-10-2(a) sets out two types of conduct for which a person could be liable, namely, willfully representing an unauthorized insurer or aiding an unauthorized insurer.[2] Section 27-10-2(a) deals with conduct that is willful, but also deals with conduct that aids an unauthorized insurer in illegally selling insurance in Alabama, whether the aid was rendered willfully or not.
Second, even if the statute imposed a "willful conduct" standard on an agent or broker and imposed a "no fault" standard of conduct on adjusters, we would hold that such a standard is rationally related to a legitimate state interest, specifically the purpose of protecting Alabama citizens from abuses by unauthorized insurers illegally operating in this state. Custard asks "What justification exists to penalize the adjuster for providing a policy benefit?" We think the justification is based on the adjuster's role in the insurance industry. The reason a person purchases insurance is so that the insurer will pay him for specified losses under specified perils. An insured person does not have a claim on an accident insurance policy until an accident occurs. An adjuster's job is to investigate that claim and determine the amount of damages, and, in return, the adjuster is paid for his services. To allow adjusters to facilitate the insurance claims process for unauthorized insurers without some duty on the adjusters' part to protect Alabama citizens from unauthorized insurers illegally operating would go against the Legislature's intentions in adopting the provisions of Chapter 10. A surplus lines broker must file a report with the insurance commissioner when surplus lines coverage is issued; therefore, it would be easy for an adjuster to check with the insurance commissioner to see if the unauthorized insurer has issued surplus lines coverage.
 Due Process
Custard argues that § 27-10-2 is ambiguous and that, because of that ambiguity, § 27-10-2, as applied to Custard, is unduly vague, unreasonable, and overbroad, and therefore denies due process.
The right to due process is guaranteed under the Alabama Constitution of 1901, Article 1, §§ 6 and 22. That right is violated when a statute or regulation is unduly vague, unreasonable, or overbroad. Ross Neely Express, Inc. v. AlabamaDep't of Environmental Mgt., 437 So.2d 82 (Ala. 1983).
Custard argues that § 27-10-2 is unreasonable because, it says, no public purpose is served by imposing liability upon an adjuster for investigating claims filed with *Page 217 
unauthorized carriers. We disagree. We think it not unreasonable for the Legislature to include adjusters in §27-10-2, because adjusters have a duty, as discussed above, to protect persons from unauthorized insurers illegally operating in Alabama. Custard argues that the statute is overbroad by imposing liability upon adjusters, who generally are not involved with the procurement of coverage. Although adjusters generally do not procure insurance, they are involved with settling claims made under insurance contracts. The unauthorized insurers and surplus lines chapter is concerned not only with unauthorized insurers who sell insurance in Alabama, but also with unauthorized insurers who "operate" in Alabama. "Operating" in Alabama would include settling claims made pursuant to an insurance contract.
Custard argues that § 27-10-2 is unconstitutionally vague in that, Custard says, it is unclear what conduct by an adjuster is prohibited by the term "directly or indirectly" as it relates to investigating or adjusting a claim. This argument is without merit. From a reading of the statute, it is clear that the term "directly and indirectly" covers any conduct related to investigating or adjusting a claim.
Based on the foregoing, Youngblood's summary judgment against Custard is due to be affirmed.[3]
OPINION OF JULY 26, 1996, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
MADDOX and ALMON, JJ., concur in the opinion and in the overruling of the application.
HOUSTON, J., concurs in the opinion in part and concurs in the result in part, and concurs in the overruling of the application.
BUTTS, J., concurs in the result of the opinion and in the overruling of the application.
HOOPER, C.J., and COOK, J., dissent from the opinion and dissent from the overruling of the application.
SHORES, J., recuses.
[1] The attorney general was notified of the constitutional challenge, in compliance with § 6-6-227, Ala. Code 1975.
[2] We realize that our interpretation of this phrase, if this phrase were being interpreted alone, would contradict general rules of grammar. However, viewing the phrase in light of the overall legislative purpose of protecting Alabama citizens from foreign insurance companies operating without authority, we conclude that placing liability on those who "aid" rather than on those who "willfully aid," as Custard argues the legislature should have done, conforms to the overall spirit of the act. Additionally, applying a "willful" standard to conduct on the part of agents or brokers and a "no fault" standard to conduct on the part of adjusters does not violate the right to equal protection, as is discussed in the next paragraph.
[3] Custard contends that in our original opinion we erred in not applying BMW of North America, Inc. v. Gore, ___ U.S. ___,116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). This present case is an interlocutory appeal from a partial summary judgment as to liability only; no damages have been assessed. Therefore, Custard's argument is irrelevant and premature. Also, we note that BMW was released in May 1996 and that our original opinion in this case was released in July 1996. While this case was pending, Custard did not move to supplement its brief to make an argument regarding BMW.